OPINION OF THE COURT
Simons, J.
 This appeal presents two questions: first, whether State courts enjoy concurrent jurisdiction with Federal courts over civil claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC §§ 1961-1968) and, second, whether defendant Leucadia has stated a cause of action for damages under the act in the fifth counterclaim of its amended answer. The Appellate Division answered the first question in the negative and thus did not pass on the second. We affirm but for different reasons. We hold that State courts enjoy concurrent jurisdiction over civil RICO claims, but that Leucadia has not pleaded a cause of action for damages under the RICO Act.
*453 I
This dispute arises out of an alleged agreement between plaintiff Simpson Electric Corporation and defendant Leucadia, Inc. for the provision of electrical contracting work in rehabilitating a building, located at 315 Park Avenue South in Manhattan. The building was owned and operated by the defendant Grand-White Realty Corporation and its president and majority shareholder, third-party defendant Issac Silver-man. At the time of the agreement Leucadia was the mortgagee in possession. Simpson commenced the action to recover damages in excess of $13 million representing the balance due on the electrical renovation work. Leucadia denied the essential allegations of the complaint and interposed several counterclaims. One of them, the fifth, purported to allege a statutory RICO violation.
RICO (18 USC §§ 1961-1968) is part of the Organized Crime Control Act of 1970. The object of that legislation was to prevent and punish "racketeering activity” (see, Sedima, S. P. R. L. v Imrex Co., 473 US 479, 480-482). Although the act was directed principally against persons affiliated with organized crime, it has evolved into something quite different because of its language. The act makes it unlawful to use income from a "pattern of racketeering activity” (1) to acquire an interest in or to establish or operate an enterprise engaged in or affecting interstate commerce (18 USC § 1962 [a]), (2) to acquire or maintain an interest in such an enterprise through a pattern of racketeering activity (§ 1962 [b]), (3) to conduct or participate in the conducting of such an enterprise through a pattern of racketeering activity (§ 1962 [c]) and (4) to conspire to do any of the foregoing acts (§ 1962 [d]). In addition to containing a criminal enforcement scheme (18 USC § 1963), the act establishes a civil enforcement scheme, including a private right of action, by providing that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney’s fee” (18 USC § 1964 [c]).
In its fifth counterclaim Leucadia alleges first, in conclusory fashion, that Simpson, Silverman and Grand-White were an "enterprise” within the meaning of 18 USC § 1962 and then, specifically, that Simpson submitted its bills and invoices to Silverman, that the amount claimed due on them was grossly *454 inflated, and that Silverman, with knowledge of the misrepresentation, submitted the bills and invoices to Leucadia who, relying upon their truthfulness and upon assurances of their accuracy made by Silverman, made additional loans to Silver-man’s corporation, Grand-White, in the form of payments to Simpson. Leucadia alleges that Silverman, for his part in these matters, received "kickbacks” from Simpson. It alleges that the United States mails were used in furtherance of this scheme and that Simpson committed at least two acts of mail fraud and thereby engaged in a "pattern of racketeering activity” as that phrase is defined in 18 USC § 1961 (5).
Simpson moved to dismiss Leucadia’s counterclaim contending that the Federal courts possessed exclusive jurisdiction over RICO civil claims and, alternatively, that a cause of action had not been stated. Supreme Court ruled that State courts have concurrent jurisdiction over RICO claims but that defendant’s claim did not come within the statute, principally because, as the United States Court of Appeals for the Second Circuit held in Sedima, S.P.R.L. v Imrex Co. (741 F2d 482), a RICO claimant must show that the defendant has been convicted of the underlying "predicate acts” in order to state a civil claim for damages.
Pending appeal from the order, the United States Supreme Court reversed the Second Circuit in Sedima (473 US 479, supra) and held that a RICO claimant need not establish that the defendants had been convicted of the underlying "predicate acts” supporting the action for money damages. The Appellate Division affirmed dismissal of Leucadia’s fifth counterclaim. It did not reach the question of whether a cause of action had been stated in light of the Supreme Court’s decision in Sedima but held instead that the Federal courts possessed exclusive jurisdiction over civil RICO actions. Two Justices dissented and voted to reverse and deny the motion to dismiss, concluding that the State courts had concurrent jurisdiction and that a cause of action had been stated. The court granted Leucadia’s motion for leave to appeal and certified the following question: "Was the order of this court dated May 18, 1987 properly made?” By the terms of the certified question we are authorized to address whether Leucadia has stated a cause of action if we first conclude that State courts have concurrent jurisdiction over RICO claims (see, CPLR 5602 [b] [1]).
*455 II
The jurisdictional issue has been considered by several appellate courts, including two in this State. The Second Department, in this case, and the First Department, in Greenview Trading Co. v Hershman & Leicher (108 AD2d 468), have both found exclusive jurisdiction in the Federal courts. Nationwide the decisions pro and con are about evenly split as to result (compare, e.g., Lou v Belzherg, 834 F2d 730 [9th Cir], cert denied — US —, 108 S Ct 1302; Karel v Kroner, 635 F Supp 725, 730; Cianci v Superior Ct. [Poppingo], 40 Cal 3d 903, 710 P2d 375; Rice v Janovich, 109 Wash 2d 48, 742 P2d 1230 [concurrent jurisdiction]; with Intel Corp. v Hartford Acc. & Indem. Co., 662 F Supp 1507 [ND Cal]; Spence v Flynt, 647 F Supp 1266 [D Wyo]; Maplewood Bank & Trust Co. v Acorn, Inc., 207 NJ Super 590, 504 A2d 819; Levinson v American Acc. Reinsurance Group, 503 A2d 632 [Del Ch] [exclusive jurisdiction]). We find the arguments in favor of concurrent jurisdiction more persuasive.
Analysis starts with the rule that presumptively State courts have concurrent jurisdiction with Federal courts over Federal claims (see, Gulf Offshore Co. v Mobil Oil Corp., 453 US 473, 478; Dowd Box Co. v Courtney, 368 US 502, 507-508; Brown v Gerdes, 321 US 178, 188 [Frankfurter, J., concurring]; Claflin v Houseman, 93 US 130, 136). This presumption of concurrent jurisdiction can be rebutted, however, by (a) an explicit statutory directive (b) unmistakable implication from legislative history or (c) clear incompatibility between State court jurisdiction and Federal interests (Gulf Offshore Co. v Mobil Oil Corp., supra, at 478; Claflin v Houseman, supra, at 137). We proceed to examine those considerations.
A
The statute does not explicitly provide for exclusive Federal jurisdiction. Section 1964 (c), which creates the private right of action, does direct that the action may be brought in "any appropriate United States district court” but that language cannot be interpreted as creating exclusive Federal jurisdiction for "[i]t is black letter law * * * that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action” (Gulf Offshore Co. v Mobil Oil Corp., 453 US 473, 479, supra, citing United States v Bank of N. Y., 296 US 463, 479; see *456 also, Dowd Box Co. v Courtney, 368 US 502, 506, supra; and compare, statutes in which "exclusive” jurisdiction has been specified, e.g., Federal Tort Claims Act [28 USC § 1346 (b)]; Securities and Exchange Act of 1934 [15 USC § 78aa]; ERISA [29 USC § 1132 (e)]; admiralty [28 USC § 1333]; Patent and Copyright [28 USC § 1338 (a)]).
B
Nor is an "unmistakable” intent to restrict jurisdiction to be found in the legislative history. The committee reports, floor debates and sponsors’ memoranda do not even address the question of jurisdiction. Nevertheless, several courts have relied on a statement made by G. Robert Blakey, a principal architect of RICO and former Chief Counsel of the Senate Subcommittee on Criminal Laws and Procedures, as evidence of congressional intent. He has stated: "There is nothing on the face of the statute or in the legislative history” that touches the question of concurrent jurisdiction. "To my knowledge, no one even thought of the issue * * * Had anyone brought up the question” of State court jurisdiction, "we would have said no.” (Flaherty, Two States Lay Claim to RICO — Interview with G. Robert Blakey, Nat LJ, May 7, 1984, at 10, col 2, reprinted in Greenview Trading Co. v Hershman & Leicher, 108 AD2d 468, 472, supra). The statement was made long after the act was passed, however, and his after-the-fact opinion is insufficient to rebut the presumption of concurrent jurisdiction (see also, Lou v Belzberg, 834 F2d 730, 736, n 4, supra; Rice v Janovich, 109 Wash 2d 48, 742 P2d 1230, 1234-1235, supra; Cianci v Superior Ct. [Poppingo], 40 Cal 3d 903, 914, n 3, 710 P2d 375, 380, n 3, supra).
The most widely accepted argument for finding that Congress intended exclusive jurisdiction to reside in the Federal courts relies on analogy to the antitrust laws and rests on the following line of reasoning: (1) the private right of action under the Federal antitrust laws, now found in section 4 of the Clayton Act and codified at 15 USC § 15 (a), has been uniformly interpreted as being maintainable only in Federal court (see, General Inv. Corp. v Lake Shore Ry., 260 US 261, 287; but see, Marrese v American Academy of Orthopaedic Surgeons, 726 F2d 1150, 1152-1153, revd on other grounds 470 US 373); (2) the language of the RICO statutes parallels that of the antitrust statutes in many respects and, in particular, the language of section 1964 (c) is modeled on 15 USC § 15 (a); *457 and (3) Congress is presumed to know what the existing Federal law is at the time it enacts a new law. Therefore, it is argued that because Congress used similar language in the two statutes and Federal courts have exclusive jurisdiction in antitrust cases, it must have intended that the Federal courts have exclusive jurisdiction of RICO claims also.
Several courts have found the reasoning persuasive (see, e.g., Greenview Trading Co. v Hershman & Leicher, 108 AD2d 468, 470-471, supra; County of Cook v MidCon Corp., 574 F Supp 902, 912, affd on other grounds 773 F2d 892; Maplewood Bank & Trust Co. v Acorn, Inc., 207 NJ Super 590, 504 A2d 819, 820-821, supra; Levinson v American Acc. Reinsurance Group, 503 A2d 632, 635 [Del Ch], supra), but the two Federal circuits that have considered the argument have rejected it (Lou v Belzberg, 834 F2d 730, 737, supra; see, County of Cook v MidCon Corp., 773 F2d 892, supra [dictum]). We reject it on several grounds.
First, although the courts have uniformly held that the Federal courts have exclusive jurisdiction over private causes of action brought under the Clayton Act, it cannot be that the language of the statute led to this interpretation. The private right of action provision of the Clayton Act (15 USC § 15 [a]) simply gives the district courts jurisdiction over suits for violation of the antitrust laws. It does not state or even suggest that such jurisdiction shall be exclusive. "It provides that suits of the kind described 'may’ be brought in the federal district courts, not that they must be” (see, Dowd Box Co. v Courtney, 368 US 502, 506, supra; see also, Marrese v American Academy of Orthopaedic Surgeons, supra, at 1152 [contrasting 15 USC § 15, with 28 USC § 1338 (a)]).
Moreover, the language of RICO and of the Clayton Act is not significantly different from the language contained in section 301 (a) of the Labor Management Relations Act of 1947 which the Supreme Court held, in Dowd Box, did not confer exclusive jurisdiction in the Federal courts (368 US, at 506, supra), or the language contained in former 43 USC former § 1333 (b) (recodified at 43 USC § 1349 [b] [1]) which the Supreme Court held, in Gulf Offshore Co., did not confer exclusive jurisdiction in the Federal courts (453 US, at 479, supra). Indeed a review of the cases holding that Federal jurisdiction is exclusive for actions to enforce the antitrust laws reveals no clear rationale as to why such a rule exists given the wording of the statute. Some commentators have *458 suggested that the reason appears to be that "the antitrust laws are uniquely Federal in that they pertain to issues of national commerce” (Redish & Muench, Adjudication of Federal Cause of Action in State Court, 75 Mich L Rev 311, 316-317). If that is the basis for the rule, then it should not be applied to RICO because RICO is not a "uniquely” Federal law in the same way as the antitrust laws. For policy reasons, the antitrust laws place limitations on freedom of contract. They make unlawful agreements that would otherwise be lawful because of their effect on the national economy. "The antitrust laws * * * were enacted for the 'the protection of competition, not competitors’ ” (Brunswick Corp. v Pueblo Bowl-O-Mat, 429 US 477, 488, quoting Brown Shoe Co. v United States, 370 US 294, 320). In contrast, the underlying "predicate acts” of a RICO violation are themselves illegal acts, and the evinced legislative intent is that the private right of action was designed to provide a legal remedy to individuals wronged by racketeering activity (see, Sedima, S. P. R. L. v Imrex Co., supra, at 487).
Second, as the dissent below noted, in the aftermath of the Supreme Court’s decision in Sedima, RICO can no longer be analogized with assurance to the antitrust legislation (see, dissenting opn of Spatt, J., 128 AD2d 339, 353). Although the Supreme Court did not address the jurisdictional issue, it did suggest that section 1964 (c) should be broadly and liberally construed to effectuate its remedial purposes (Sedima, S. P. R. L. v Imrex Co., supra, at 494-495). Those remedial purposes are most evident in the provision creating a private right of action for parties injured by racketeering activity (id.). Whatever the proper scope of RICO’s substantive provisions, a determination of exclusive Federal jurisdiction would place an obstacle in the way a private litigant who, for a variety of reasons, might prefer a State forum. A congressional intention to limit jurisdiction to Federal courts should not be read into the statute when it would thwart the remedial objectives of the act. The Supreme Court also rejected the analogy to the antitrust laws in Sedima insofar as it held that a RICO claimant was not required to show an independent "racketeering injury” similar to the antitrust injury that a Clayton Act claimant must prove in order to obtain money damages under that act (Sedima, S. P. R. L. v Imrex Co., supra, at 498-499).
Third, the creation by Congress of a private right of action does not necessarily entail exclusive Federal jurisdiction *459 (Cianci v Superior Ct. [Poppingo], 40 Cal 3d 903, 913, 710 P2d 375, supra). For example, in the Petroleum Marketing Practices Act (15 USC §§ 2801-2841), Congress created a private right of action (§ 2805 [a]) and it has been held that jurisdiction over this action is not limited to the Federal courts (Ted’s Tire Serv. v Chevron U. S. A., 470 F Supp 163, 165). An even better example is the private right of action created by Congress to enforce the antitying provisions of the Bank Holding Company Act (12 USC § 1975). This statute, which contains virtually identical language to that of RICO found in 18 USC § 1964 (c), was described as a " 'valuable supplement’ ” to the antitrust laws (see, Lane v Central Bank, 756 F2d 814, 817, quoting 1970 US Code Cong & Admin News 5519, 5559) and yet it has been held that States can exercise concurrent jurisdiction over private actions to enforce it (Lane v Central Bank, supra).
Finally, there is little support for exclusive jurisdiction found in other aspects of the statutory scheme. RICO statutes include provisions concerning Federal venue and service of process (18 USC § 1965), vesting the United States Attorney General with investigative powers (18 USC § 1968), granting the district court jurisdiction to prevent and restrain violations of section 1962 (18 USC § 1964 [a]) and allowing the Attorney General to expedite cases brought by the United States (18 USC § 1966) but other Federal acts have similar enforcement and venue provisions and they have been interpreted as permitting concurrent jurisdiction in the enforcement of Federal rights created (e.g., Labor Management Relations Act of 1947 interpreted by the Supreme Court in Dowd Box Co. v Courtney, 368 US 502, supra; antitying provisions of Bank Holding Company Act [12 USC §§ 1971-1978] interpreted by the Eleventh Circuit in Lane v Central Bank, 756 F2d 814, supra; Petroleum Marketing Practices Act [15 USC §§ 2801-2841] interpreted by the District Court for District of Connecticut in Ted’s Tire Serv. v Chevron U. S. A., 470 F Supp 163, supra). The fact that the United States Attorney may choose to bring his lawsuits on behalf of the United States in Federal court sheds no light on whether Congress intended to preclude a private litigant from bringing suit in State court.
C
The final factor identified in Gulf Offshore (supra) is whether Federal interests are clearly incompatible with State
*460 court jurisdiction. That determination requires consideration of "the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims” (Gulf Offshore Co. v Mobil Oil Corp., 453 US 473, 483-484, supra). These considerations do not warrant a finding that the presumption of concurrent jurisdiction has been rebutted in this case. To be sure, uniformity in this area is desirable, and the Federal courts have had difficulty in reaching a consensus on the requirements necessary to state a cause of action under RICO. But there is no reason why State courts cannot interpret the language of section 1962 (c) and apply the law as well as the Federal courts. Given the split within the Federal circuits on the question, the State courts will not likely cause further division; true uniformity must come, apparently, from pronouncements by the United States Supreme Court. Significantly, the Clayton Act predicates recovery on an "antitrust injury”, an element which requires national uniformity. RICO contains no similar "racketeering injury” requirement (see, Sedima, S. P. R. L v Imrex Co., supra, at 493-500; see also, Cianci v Superior Ct. [Poppingo] 40 Cal 3d 903, 915, n 4, 710 P2d 375, 381, n 4). Moreover, complete uniformity in interpreting and applying crimes that qualify as "predicate acts” under RICO is not necessary because section 1961 provides that State criminal laws, in addition to Federal crimes, can serve as the RICO predicate acts. In short, RICO incorporates by reference both State and Federal law and there is little difference between State Judges interpreting Federal criminal law if the predicate act alleged is a Federal law violation and Federal Judges interpreting State criminal law if the predicate act alleged is a State law violation. Although it may be fairly assumed that Federal Judges have greater familiarity with interpreting Federal violations, it may also be assumed that State court Judges have greater familiarity in interpreting State criminal law violations. Moreover, while the Federal courts are indeed divided over the question of what a RICO claimant must plead to state a cause of action, there is not, to our knowledge, a significant split with respect to interpreting the underlying predicate acts.
Finally, the majority below referred to the New York Legislature’s passage of a so-called little RICO, the Organized Crime Control Act (L 1986, ch 516), and claimed that the existence of such a law militates against a conclusion of concurrent jurisdiction (see, 128 AD2d 339, 346). We agree, for *461 the reasons stated by the dissenters below, that the argument is unpersuasive. We add only that because the question of whether State courts have concurrent jurisdiction over civil RICO actions is a Federal question, we fail to see the relevance of the Legislature’s passage of OCCA. The present inquiry is the intention of the Congress, not the intention of the State Legislature.* If the State Legislature’s action suggests anything, it suggests that the State is not unsympathetic to RICO claims (cf., Rice v Janovich, 109 Wash 2d 48, 742 P2d 1230, 1235, supra; Cianci v Superior Ct. [Poppingo], 40 Cal 3d 903, 916, 710 P2d 375, supra).
Accordingly, we hold that the presumption that State courts have concurrent jurisdiction over RICO claims has not been rebutted.
III
Our conclusion that the State courts have concurrent jurisdiction over RICO civil claims requires us to determine whether Leucadia’s fifth counterclaim states a cause of action under the statute.
RICO provides that anyone injured by "enterprises” conducted through a "pattern of racketeering activity” shall have a cause of action and can recover treble damages (18 USC §§ 1962, 1964 [c]). A "pattern of racketeering activity” is defined as "at least two acts of racketeering activity” within a 10-year period (§ 1961 [5]). "Acts of racketeering” are defined as a variety of acts chargeable under State law and indictable under Federal law (§ 1961 [1]). Thus, the statute on its face would appear to allow plaintiffs to make a Federal case (and obtain treble damages) out of garden variety fraud, provided that the defendants have committed two predicate acts, which might be as simple as mailing fraudulent bills or making interstate phone calls for the purpose of defrauding a victim.
To restrict abuses resulting from such an expansive reading, the Second Circuit held, in Sedima, that (1) to have standing to bring a civil RICO claim, the claimant must allege a "racketeering injury”, carrying with it "at least * * * the *462 obligation that the plaintiff show injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter” and (2) that a prior criminal conviction is a prerequisite to the civil RICO action (741 F2d, at 496, supra). In that case, a supplier of equipment to aerospace and defense industries brought an action containing a RICO claim against a New York exporter of aviation parts alleging that the exporter had mailed inflated copies of purchase orders and credit memorandums thereby receiving payment under a cost plus contract in excess of its actual costs. The Second Circuit dismissed the complaint stating: "there is simply no evidence that in creating RICO, Congress intended to create the broad civil cause of action that the reading of the statute given by its proponents would allow” (741 F2d 482, 487, supra).
The United States Supreme Court reversed, holding that there was neither a separate racketeering injury nor a prior criminal conviction component to a civil RICO action. The court left open the question of whether Sedima had stated a cause of action, but noting that a violation of section 1962 (c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity” (Sedima, S. P. R. L. v Imrex Co., 473 US, at 496, supra), pointed out, in footnote 14, that the definition of "a pattern of racketeering activity” differs from other provisions in section 1961 in that it states that a pattern "requires” at least two acts of racketeering activity, not that it "means” two acts. The implication is that while at least two acts are necessary to state a RICO action, they may not be sufficient. The court suggested that this restrictive interpretation of the term pattern had support in common parlance and in the legislative history. Quoting from the legislative history, it stated " '[t]he term "pattern” itself requires the showing of a relationship * * * So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern’ ” (id., at 496, n 14, quoting 116 Cong Rec 18940 [1970] [statement of Senator McClellan]). The lower Federal courts have followed Sedima’s footnote 14 to place one limitation or another on the scope of civil RICO, primarily adopting two lines of reasoning.
The first theory, adopted by a majority of courts and called the multiple episodes theory, focuses on the word "pattern” in the statute. These courts interpret the word pattern as embracing two concepts: the relationship of the predicate acts *463 and the continuity of the racketeering activity beyond the one criminal scheme or episode. A plaintiff must be able to satisfy the relationship requirement of Sedima, that is, he must show that the predicate acts are part of a common scheme. He must also show that the pattern is continuing because the act was not designed to apply to "sporadic activity” or reach the "isolated offender” (see, Sedima, S. P. R. L. v Imrex Co., supra, at 496, n 14). Although defining the continuity requirement has been the source of some difficulty, courts are in general agreement that a plaintiff must demonstrate at least a threat of ongoing illegal conduct by the RICO enterprise. "A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished” (Condict v Condict, 826 F2d 923, 928-929 [10th Cir]; see also, Torwest DBC v Dick, 810 F2d 925; Schreiber Distrib. Co. v Serv-Well Furniture Co., 806 F2d 1393, 1399 [9th Cir]; Holmberg v Morrisette, 800 F2d 205, 210 [8th Cir], cert denied 481 US 1028; Superior Oil Co. v Fulmer, 785 F2d 252, 257 [8th Cir]; Marks v Pannell Kerr Forster, 811 F2d 1108, 1111-1112 [7th Cir]; Lipin Enters. v Lee, 803 F2d 322, 323-324 [7th Cir]).
In this action Leucadia has not satisfied the continuity requirement. It has failed to allege that the Silverman — Simpson — Grand-White scheme was not an isolated episode and the court cannot infer from the fact that the scheme progressed over a number of months and that several predicate acts occurred during that time that some ongoing illegal conduct is being committed by the enterprise. Accordingly, Leucadia’s fifth counterclaim fails to state a RICO claim under the multiple episodes theory.
A different approach has been taken by the Second Circuit; it has limited the scope of RICO by focusing on the "enterprise” requirement. Post-Sedima decisions in the Second Circuit, including United States v Ianniello (808 F2d 184, cert denied 482 US —, 107 S Ct 3230), Beck v Manufacturers Hanover Trust Co. (820 F2d 46, cert denied — US —, 108 S Ct 1588), Furman v Cirrito (828 F2d 898), Albany Ins. Co. v Esses (831 F2d 41) and Creative Bath Prods. v Connecticut Gen. Life Ins. Co. (837 F2d 561) are extensively reviewed by the Second Circuit’s opinion in Beauford v Helmsley (843 F2d 103) and need not be reexamined here. In Beauford the court summarized its position: "Although * * * we speak in terms of 'enterprise’ rather than 'pattern’, we nonetheless require con *464 tinuity in any event, and find insufficient evidence of continuity in a single criminal episode regardless of how many fraudulent acts it entails. In other words, a single criminal episode or scheme does not charge a claim under RICO because it lacks sufficient continuity to constitute an enterprise, even if its fraudulent acts constitute a pattern” (Beauford v Helmsley, supra, at 110). The court in Beauford held that a single alleged scheme to defraud buyers and tenants in a cooperative conversion of an apartment complex into over 8,000 condominium units did not state a RICO cause of action, even though the alleged enterprise was ongoing and still offering condominiums for sale pursuant to the alleged fraudulent plan. If the Beauford plaintiffs did not state a cause of action under RICO on those facts because of the lack of continuity to constitute an enterprise, then it would appear that Leucadia has failed to state a cause of action here because it has not pleaded that Simpson, Silverman and Grand-White ever defrauded others in a like manner in the past or that they will continue to defraud others in the future by using a similar kickback scheme.
We have no need to define with precision the minimum requirements for a RICO causé of action or even to choose whether the continuity component of a civil RICO action should be related to the term "pattern” as it has been held by most of the Federal circuits or to the term "enterprise”, the approach taken by the Second Circuit. Regardless of the approach used, Leucadia fails to state a RICO cause of action because there is no factual allegation that the Simpson— Silverman — Grand-White enterprise is continuing with racketeering activity.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Wachtler and Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, etc.

 That is not to say that the Legislature is not permitted to amend the CPLR to provide that New York State courts should not exercise jurisdiction over RICO claims (see generally, Brown v Gerdes, 321 US 178, 188-189 [Frankfurter, J., concurring]), but only that this is not the question before us inasmuch as there is nothing contained in OCCA warranting such an inference.