Roberto **HAGGIAG and Prodex, N.V.,** individually and on behalf of Rose Hill Property Associates, Inc., Plaintiffs,

v.

**Harry Joe BROWN, Jr., Peter Oberlink, George Ackerman, Tan Holding Corporation, Bushnell Corporation, H.J. Brown Properties, Inc. a/k/a H.J. Brown, Inc. and "John Does" 1 through 10, Defendants.**

### No. 89 Civ. 7754 (PKL).

United States District Court, S.D. New York.

Jan. 12, 1990.

---

Sherman, Citron & Karasik P.C., New York City (Brian Guillorn, of counsel), for plaintiffs.

Jacobs and Zinns, New York City (Robert A. Jacobs, Paul J. Solda and Jay Zinns, of counsel), for defendants.

LEISURE, District Judge.

This is an action alleging fraud, breach of fiduciary duty, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (hereinafter "RICO"). Plaintiffs have come before the Court seeking provisional relief in the form of, first, a preliminary injunction preventing defendants from transferring any assets of Rose Hill Property Associates Inc. ("Rose Hill"); second, an order pursuant to Fed.R.Civ.P. 64 attaching the assets of certain defendants,

and third, the appointment of a temporary receiver to manage and control the assets of Rose Hill pending final disposition of this matter. Defendants have cross-moved for dismissal of the action. The case originally came to the Court in the form of an Order to Show Cause dated November 21, 1989. The matter was heard by the Honorable John E. Sprizzo, United States District Judge of this Court, on November 22, 1989. At that time Judge Sprizzo entered a temporary restraining order which, in part, required that all corporate checks of Rose Hill in amount of $1000 or greater be countersigned by Howard Adler, Esq., the attorney-in-fact for plaintiffs, and enjoining any transfer of assets of Rose Hill other than those necessary in the ordinary course of business. Transcript of Proceedings on November 22, 1989, at 4. A further hearing was held before this Court on December 5, 1989, at which time the parties agreed to extend the temporary restraining order until the parties could prepare for, and the Court could hear, plaintiffs' arguments for preliminary relief. One change was made in the order of Judge Sprizzo: the minimum amount for checks required for countersignature was raised from $1000 to $1500. Transcript of Proceedings on December 5, 1989, pp. 6–7.

A partial evidentiary hearing was held before this Court on January 3, 1990, after each party had the opportunity to fully brief its positions and present appropriate documentary evidence. After a half day of testimony, the Court indicated to the parties its ability to rule based on the information before it.[1] At that time, the Court entered the following rulings: first, the Court denied plaintiffs' motion for a broad preliminary injunction freezing Rose Hill's assets. The Court, however, did issue a preliminary injunction which required that all Rose Hill checks in amounts greater than $1500 be countersigned by Howard Adler, that Howard Adler and the members of the Rose Hill board be notified in writing of all proposed leases, sales, and opening of all banking or transactional accounts involving Rose Hill, including investment accounts, that Howard Adler be given ten days from receipt of notification to object to any of the above actions, that Howard Adler should not unreasonably withhold his approval of any of the above actions, and that any violation of the above should subject the violator to sanctions and a possible finding of contempt. Second, the Court denied plaintiffs' motion for an order of attachment. Third, the Court denied plaintiffs' motion for the Court appointment of a receiver. Fourth, the Court denied defendants' motion to dismiss. The Court reserved its findings of facts and conclusions of law as required under Fed.R.Civ.P. 52(a) to this opinion. Transcript of Proceedings on January 3, 1990, at 92–94.

## BACKGROUND

Rose Hill Property Associates is a New York corporation whose principal asset is an office building located at 461 Park Avenue South, New York, New York. Rose Hill is owned jointly by plaintiff Roberto Haggiag ("Haggiag") and defendant Harry Joe Brown, Jr. ("Brown").[2] This action is not the first time there has been a dispute between these parties. In early 1987, a dispute arose over the operation of Rose Hill. Plaintiffs' Memorandum of Law at 2. That dispute was finally settled through an agreement between Haggiag and Brown dated July 15, 1987 ("July 15, 1987 Agreement"). Under that agreement, Brown was placed in charge of the corporate records and was authorized to take certain actions on behalf of Rose Hill, including

---

**1.** Prior to and during the hearing, the parties indicated their willingness to have the Court treat the applications as a submitted motion and cross-motion on the papers before the Court. The Court, however, expressed its desire to go forward with the previously scheduled hearing.

**2.** Plaintiff Haggiag asserts that his shares of Rose Hill are in fact owned by plaintiff Prodex, N.V., a corporation organized under the laws of

the Netherlands, and wholly owned by Haggiag. Defendants dispute the legitimacy of the corporate ownership of the shares of Rose Hill, asserting that no transfer of ownership from Haggiag to Prodex was ever approved by the Rose Hill Board of Directors or otherwise registered. It appears to the Court that Brown is the majority shareholder of Rose Hill, though the exact percentages of ownership are in dispute.

the placement of a mortgage on the property, not to exceed $5 million. July 15, 1987 Agreement, attached as Exhibit A to Affidavit of Howard B. Adler, Esq., sworn to on November 20, 1989 ("Adler Aff."). The agreement further permitted Haggiag or his agent to examine the books or records of Rose Hill on 24 hours' advance written notice, and required all Rose Hill checks in amounts greater than $1500 be countersigned by Haggiag's agent, Howard Adler. Id.

Eight months later, on March 1, 1988, there was a meeting of the Rose Hill Board of Directors at which the operations of Rose Hill were further clarified. At that meeting of the Board, Brown was named president of Rose Hill, Gail Silver ("Silver") was named secretary,[3] and Peter Oberlink ("Oberlink") was named assistant secretary and treasurer. Minutes of Meeting of Directors of Rose Hill, dated March 3, 1988, attached as Exhibit B to Adler Aff. Soon after that meeting, Brown, on behalf of Rose Hill and with the knowledge and approval of the Board of Directors, executed a mortgage in the amount of $1.8 million, the proceeds of which were used to buy out John Campione ("Campione"), a shareholder and former president of Rose Hill. A second mortgage, for $400,000, was executed in May 1988 for the purpose of renovating portions of 461 Park Avenue South. This mortgage was also taken with the approval of the Rose Hill Board of Directors. Adler Aff. ¶ 19.

In June 1988, a $3 million mortgage was executed with a second bank to prepay the previous mortgages. After that prepayment, some $800,000 remained in cash. That money was deposited in an account at Kidder, Peabody & Co ("Kidder, Peabody"). Plaintiffs were aware of these actions, but allege that they were unaware of the creation or existence of the Kidder, Peabody account prior to this transaction. Adler Aff. ¶ 25.

Soon after these mortgages were executed, the relationship between the parties began to deteriorate. Plaintiffs claim that they requested information regarding the proceeds of the renovation mortgage which was never provided to them. Adler Aff. ¶ 20. Plaintiffs also allege that, beginning in November 1988, Oberlink ceased to send Rose Hill's monthly operating statements to Adler, despite Adler's requests to receive those documents. Adler Aff. ¶¶ 22–23.[4] In December 1988, defendants Brown and Oberlink filed a federal tax return for Rose Hill that incorrectly stated that Brown was the sole officer and shareholder of Rose Hill. Reply Aff., Exhibit M.; Transcript of Proceedings on January 3, 1990 at 38–51. Meanwhile, defendants Brown and Oberlink were operating the property. During the period from September 1988 when Brown was named president, to October 1989, the rent roll of the building at 461 Park Avenue South increased from approximately $20,000 a month to almost $60,000 a month. Affidavit of George Ackerman, sworn to on December 5, 1989 ("Ackerman Aff."), Exhibits E, F. That building is old and was not in fully marketable condition at the time the current Rose Hill management took control of its operations. Brown Aff. ¶ 12.

During 1989, defendants continued their efforts to lease portions of 461 Park Avenue South. It is the manner in which these and other transactions took place that is in dispute. Pursuant to the minutes of the March 1, 1988 meeting, the sixth floor of 461 Park Avenue South had been leased to defendant Tan Holding Corporation ("Tan"), a company controlled by defendant Brown. Tan undertook the renovation of that space and has subleased that space at a profit. Subsequently, and apparently without Adler's approval, Rose Hill leased the seventh and tenth floors of 461 Park Avenue South to defendant Brown, the fifth and eleventh floors to defendant Bushnell Corporation ("Bushnell"), which

---

**3.** Apparently, Silver is Adler's wife. Affidavit of Harry Joe Brown, Jr., sworn to on December 1, 1989 ("Brown Aff."), ¶ 18.

**4.** Oberlink testified at the hearing that no such statements were kept from November 1988 to May 1989 because Oberlink did not have time to prepare such reports. Transcript of Proceedings on January 3, 1990 at 31–33.

plaintiffs allege is controlled by Brown, and the fourth floor to Tan. Affidavit of Howard B. Adler, Esq., sworn to on December 27, 1989 ("Reply Aff."), Exhibits G through K. These spaces are being subleased at a profit to the lessees. However, it appears that in each case lessees committed money to renovating the space prior to the entry of any sublease.

On May 1, 1989, Brown hired defendant George Ackerman ("Ackerman") to provide accounting and other financial services support to Rose Hill. Ackerman Aff. ¶¶ 1–2. Ackerman was hired without Adler's approval and apparently without his knowledge. Reply Aff. ¶ 11. Plaintiffs allege that an unauthorized Board of Directors meeting was held on June 11, 1989, of which neither Silver nor Adler received notice until June 22 when they were requested to approve such minutes. Adler Aff. ¶ 27. Additionally, plaintiffs allege that defendants opened bank accounts at European American Bank and investment accounts at Kidder, Peabody, without the knowledge or approval of Adler or Silver, and made numerous transactions involving these accounts without the knowledge or approval of Adler or Silver.

Plaintiffs also assert that checks were submitted to Adler for countersignature during September 1989, some of which, plaintiffs claim, were for the personal benefit of defendants. Additionally, plaintiffs claim the defendants wrote a series of checks for their personal benefit in amounts of $1500 or less in order to avoid the need to submit those checks to Adler for countersignature. Reply Aff., Exhibits A, O. Finally, plaintiffs assert that the individual defendants prevented Adler from obtaining access to the books and records, and also constantly refused, during the summer and fall of 1989, to give Adler accurate and complete information about the operations and finances of Rose Hill.

Defendants claim that the dispute between the parties arises from what is, in essence, a question of contract interpretation. They assert that the actions taken by the parties at the March 1, 1988 Board of Directors meeting superseded the July 15, 1987 Agreement. Specifically, defendants point out that the minutes for the March 1, 1988 Board meeting indicated that Brown was made president of Rose Hill "with the same powers, benefits and duties as held by the former President." Adler Aff., Exhibit A. Defendants claim that the former president, Campione, was empowered to take all corporate actions without explicit Board approval and without notification of Adler or any other party. Affidavit of Harry Joe Brown, Jr., sworn to on December 18, 1989 ("Brown Aff. II"), ¶¶ 5–6. There is no documentary evidence indicating the scope of Campione's powers, nor is there an affidavit from Campione indicating his understanding of the scope of his authority.

Further, defendants assert that when they did attempt to cooperate with Adler, he was difficult to reach and impeded defendants' efforts to improve Rose Hill's operating results. Defendants claim that they attempted to continue to keep Adler up to date on the activities of Rose Hill as a courtesy. Brown Aff. II, ¶¶ 14, 23; Affidavit of Peter C. Oberlink, sworn to on December 18, 1989 ("Oberlink Aff. II"), ¶¶ 12, 14, 30.

There was substantial correspondence between the parties during the fall of 1989. Plaintiffs, dissatisfied with the results of this contact, filed this action seeking immediate and extraordinary relief.

## DISCUSSION

Plaintiffs have demanded three separate provisional remedies: a preliminary injunction, an order of attachment, and the appointment of a receiver. Defendants have cross-moved to dismiss. The Court will address these requests for relief in turn.

### A) Preliminary Injunction

It is well settled in the Second Circuit that, "A party seeking a preliminary injunction must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and 'either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair

ground for litigation and a balance of hardships tipping decidedly in its favor.' " *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988), *quoting Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982). In general, "the purpose of a preliminary injunction is to preserve the *status quo ...*" *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir.1989). "As a general rule, of course, a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages." *Green v. Drexler*, 760 F.2d 406, 416 (2d Cir.1985) (citations omitted). One of those situations is where there is a showing that assets may be transferred in a manner that would frustrate the relief. *Id.* However, "inequitable conduct alone cannot justify the entry of a preliminary injunction. The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction." *Buckingham Corporation v. Karp*, 762 F.2d 257, 262 (2d Cir.1985).

█ Plaintiffs originally moved for a broad and intrusive preliminary injunction. They requested an order "preliminarily enjoining defendants from transferring *any* assets of Rose Hill Property Association [sic] Inc. ("Rose Hill") pending resolution of this action." Order to Show Cause dated November 21, 1989, pp. 1–2 (emphasis added). Such an order would, in effect, freeze the operations of Rose Hill as it would, on its terms, prevent the paying of any bills or salaries during the period of the injunction. The Court finds that such an injunction is both inappropriate and unwarranted. Both sides to this litigation have asserted that Rose Hill is in somewhat precarious financial condition. An injunction such as that demanded by plaintiffs, even if issued in conjunction with an order appointing a temporary receiver, would likely worsen the current condition of Rose Hill rather than improve it. Defendants are the parties most familiar with the current operations of Rose Hill and with any and all on-going negotiations for the leasing of space and/or renovations in 461 Park Avenue South. A change in management could result in just the sort of dissipation of corporate assets, though unintentional, that plaintiffs appear to fear.

Furthermore, it is clear that the relief sought is not in proportion to the actual showing made by plaintiffs in this matter. Such relief is not simply an attempt to maintain the *status quo* during the pendency of the action, but is an attempt to take control of property away from defendants. If this were property owned solely or in large part by plaintiffs, and defendants were simply managers and/or minority holders, plaintiffs would have a far better case for the broad injunction that they are seeking. However, such is not the case. Plaintiffs are the minority holder. Their interest is in seeing that the value of their holdings is not improperly or fraudulently diminished. The injunction demanded may in fact cause just the sort of diminishment that plaintiffs wish to avoid.

Plaintiffs have not demonstrated that the Court should impose a provisional remedy that goes beyond maintaining the *status quo*. Plaintiffs have provided some evidence that defendants may be using certain corporate assets for their personal benefit. This evidence consists of the leases granted to certain defendants for extended terms at a rate significantly below the rate at which the space has subsequently been subleased, evidence that a series of checks have been written to defendants on Rose Hill accounts in amounts of $1500 or less to avoid Adler's scrutiny, the filing of an apparently improper tax return, the opening of numerous and unexplained banking and investment accounts and transactions between those accounts and defendants, and apparently misleading actions taken regarding the alleged June 11, 1989 Board of Directors meeting. However, the Court also notes that there is compelling evidence that the financial condition of Rose Hill has improved substantially in the time that defendants have managed the property. The Court also fails to find any significant evidence of any massive dissipation of assets of the sort which would be required in order for the drastic remedy sought by plaintiffs to be appropriate.

This does not mean, however, that the Court believes that no provisional remedy should be imposed. The Court finds that there is a sufficiently serious question of law going to the merits in this case relating to plaintiffs' rights to participate in and be informed about the operation of Rose Hill. The issue is the status of the July 15, 1987 Agreement between the parties regarding the operation of Rose Hill. Plaintiffs argue that that agreement is still in effect and that defendants have abrogated the terms of said agreement. Defendants assert that the March 1, 1988 Board of Directors meeting superseded any previous agreement.

This is an important contract question for this case. If plaintiffs are correct, then some of the actions taken by defendants are in violation of the July 15, 1987 Agreement. However, if defendants are correct in their interpretation, then it may necessarily follow that Brown is free to take all actions taken by the previous president of Rose Hill. It is also important to note in this regard that the expanse of the prior president's authority is also in question.

Having found that there is a serious question of law that goes to the merits of the case, the Court must examine the balance of the hardships. If the Court were to impose the drastic injunction requested by plaintiffs, that balance would tip in favor of defendants. At the least, Brown and Oberlink would lose managerial authority properly granted them by the Board of Directors, and Brown would lose control of Rose Hill, a corporation in which he has made a substantial investment. However, in viewing the current state of affairs, the Court finds that plaintiffs are the most likely to suffer harm if some steps are not taken to preserve the *status quo* relationship between the parties. Plaintiffs have a not insubstantial financial interest in Rose Hill. There is an existing agreement between the parties, the July 15, 1987 Agreement, which gives plaintiffs certain rights in regard to the operations of Rose Hill.

Nowhere is that agreement *explicitly* superseded. Additionally, for a period after the March 1, 1988 Board of Directors meeting, at which defendants claim the prior agreement was abrogated, defendants continued to abide by the July 15, 1987 Agreement, informing plaintiffs of major corporate actions, and submitting checks in amounts greater than $1500 to Adler for countersignature. Accordingly, the Court finds for the purposes of deciding on the requested provisional relief that these rights of notification and countersignature are still in place and are part of the *status quo* to be maintained.

The Court also finds, however, that in supporting the *status quo*, it must also act to protect the rights of defendants as managers of Rose Hill. Evidence has been presented which the Court cannot ignore that Adler has been difficult to reach at times, has been obstructionistic and overly demanding in his dealings with defendants. Accordingly, the Court finds it appropriate to require that Adler use his authority judiciously and in a timely fashion.

Thus, in its order delivered from the bench on January 3, 1990, and attached as Appendix A to this opinion, the Court converted the temporary restraining order issued by Judge Sprizzo and extended by this Court into a preliminary injunction as far as it required that all checks in amounts greater that $1500 be countersigned by Adler. Further, the Court ordered that Adler and all members of the Rose Hill Board be informed of all leases, sales, and opening of all banking and transactional accounts, and that Adler be given ten days to object to any of those actions. Finally, Adler was ordered not to withhold his approval of any of the above actions unreasonably.

## B) Order of Attachment

Plaintiffs had also moved for the Court to issue an order of attachment pursuant to Fed.R.Civ.P. 64[5] and N.Y.Civ.

---

5. Rule 64 states in part:
 At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the pur-

 pose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in

Prac.L. & R. ("CPLR") 6201(1). Under CPLR 6201(1), a party may receive an order of attachment when "The defendant is a non-domiciliary residing without the State, or is a foreign corporation not qualified to do business in the State." CPLR 6201(1). The only defendants whose property could be attached under CPLR 6201(1) are H.J. Brown Properties, Tan and Bushnell which are foreign corporations, not authorized to do business in New York.[6]

To obtain an order of attachment, the movant must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendants exceeds all counterclaims known to the plaintiff." CPLR 6212(a). The burden is on the moving party to establish the grounds for the levy. *Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F.Supp. 428, 432 (S.D.N.Y.1989). The issuance of an order of attachment, even if the statutory requirements are met, is in the discretion of the Court. *Thornock v. Kinderhill Corp.*, 712 F.Supp. 1123, 1132 (S.D.N.Y.1989).

Defendants admit that Bushnell and Tan are foreign corporations,[7] and as such fall within the ambit of CPLR 6201(1). However, the Court's analysis cannot end there. There are two circumstances here that miti-

gate against the entry of an order of attachment. First, defendants assert that Tan's and Bushnell's only assets are their leases in 461 Park Avenue South and the improvements they have made under those leases. Defendants' Memorandum of Law at 20. Plaintiffs, in their efforts to show self-dealing, have repeatedly asserted that those leases are of substantial value, and certainly those leases are assets within the reach of this Court should a judgment for plaintiffs on the merits be entered at the conclusion of this action.

Second, and perhaps more telling, plaintiffs have also repeatedly asserted that Tan and Bushnell are controlled by defendant Brown. Plaintiffs' Memorandum of Law at 4, 18; Adler Aff. ¶ 83. The Court has already indicated that based on the evidence before it, the Court must conclude for these purposes that Brown is currently a New York domiciliary, and thus within the reach of a judgment of this Court. Since Brown allegedly controls the corporations whose assets plaintiffs desire to attach, and since the assets of these corporations appear to be fixed here in New York, the Court at this time does not find cause for the entry of the extraordinary remedy of attachment. *Merrill Lynch Futures Inc. v. Kelly*, 585 F.Supp. 1245, 1259 (S.D. N.Y.1984); *Reading & Bates Corp. v. National Iranian Oil*, 478 F.Supp. 724, 725

---

which the district court is held, existing at the time the remedy is sought.... The remedies thus available include ... attachment....

**6.** Plaintiffs originally requested that the attachment order also be entered against Brown as a non-domiciliary. However, Brown in his affidavits has stated that he is a New York resident. Plaintiffs challenge that assertion, urging as evidence that Brown was in France at the time the temporary restraining order was entered in this matter. Plaintiffs' Reply Memorandum of Law at 8–9. Plaintiffs assert that Brown stated at a deposition in the spring of 1989 that he was a resident of France. Plaintiffs, however, do not answer Brown's sworn assertion that during the summer of 1989, after the deposition, Brown got married and changed his residency. The Court for the purposes of deciding on the appropriateness of provisional, extraordinary relief, accepts the sworn statement of Brown that he is a New York resident since the summer of 1989, particularly in the light of no documentary or testamentary evidence to the contrary.

**7.** Plaintiffs also continue to request that an order of attachment be entered against H.J. Properties, Inc. No appearance has been made on behalf of that alleged defendant, and counsel for the remaining defendants including Brown, who plaintiffs assert is the principal of H.J. Brown Properties, deny any knowledge of the existence of any such corporation. Transcript of Proceedings on December 5, 1989 at 9. Plaintiffs have submitted no documentary evidence of the existence of such a corporation, nor of service upon such a corporation. The Court declines the invitation of plaintiffs to enter an order of attachment against a party which has not appeared in the action and the existence of which, based on the submissions before the Court, is substantially in doubt. The plaintiffs' contention that the Court should enter such an order because H.J. Brown Properties has not appeared and presented opposition is, at best, specious.

(S.D.N.Y.1979). The Court cannot find that plaintiffs have demonstrated a need for the remedy they seek. Defendants have substantial assets in their leases at 461 Park Avenue South. Plaintiffs have not shown that even if the assets of Rose Hill were to be dissipated, that the assets of the corporate defendants, in their current fixed state, could or would be harmed in any way. Accordingly, the request for an order of attachment is denied.

### C) Appointment of a Receiver

 Plaintiffs have further requested the Court to appoint a receiver to operate Rose Hill during the pendency of this action.

"[T]he appointment of a receiver is an extraordinary remedy, which 'should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property.'" *Republic of the Philippines v. New York Land Co.*, 852 F.2d 33, 36 (2d Cir. 1988), *quoting* Wright & Miller, *Federal Practice and Procedure* § 2983. Plaintiffs look to the actions of the District Court in *New York Land* for support of their request that a receiver be appointed. This reliance is misplaced. The District Court in that case appointed a special property advisor to monitor the operations of the property, not to actually take over control of the management. *New York Land, supra,* at 35–36. Indeed, the Second Circuit explicitly distinguished between the appointment of a receiver, and the action taken by the District Court, and noted that "here the district court's order was far less intrusive." *Id.* at 36.

There is substantial dispute regarding the financial management of Rose Hill, particularly during 1988 and the first half of 1989. The books and records of Rose Hill were not well maintained, and there are discrepancies among the various documents presented by the parties regarding the financial status of Rose Hill. However, the Court does not find that the situation has reached the point of requiring that which the plaintiffs admit is an extreme remedy. Plaintiffs' Memorandum of Law

at 24. The rent roll of the property has improved dramatically under defendants' management. The evidence of discrepancies is just that: evidence of discrepancies. That evidence does not show, by itself, that the discrepancies are part of an effort to dissipate the assets of Rose Hill. Similarly, the evidence that Rose Hill is losing money is also not conclusive. It is certainly not appropriate for a court to appoint a receiver every time a company loses money, particularly where there is evidence, as there is here, that the management in place has improved the situation of the corporation in question. Accordingly, the request for the appointment of a receiver is denied.

### D) Defendants' Motion to Dismiss

Defendants have moved to dismiss the action on a number of grounds. A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See Morales v. New York State Department of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). For the purposes of a motion to dismiss, the Court must accept the plaintiffs' allegations of facts as true together with such reasonable inferences as may be drawn in their favor. *Murray v. City of Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir. 1967). *See also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686. "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc,* 748 F.2d 774, 779 (2d Cir.1984) (citations omitted). "Dismissal of a complaint ... is a 'drastic step.'" *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985) (citations omitted).

 Defendants assert that plaintiffs have failed to assert grounds on which

relief can be granted under RICO.[8] Defendants' attack on plaintiffs' RICO claims are numerous. First, defendants assert that plaintiffs have failed to allege that they were injured by defendants' alleged conduct as required under 18 U.S.C. § 1964. Reading plaintiffs allegations in the light most favorable to them, as the Court must in this situation, this challenge must fail. Regardless of the viability under RICO of plaintiffs' claims of diminution of the value of their shares, plaintiffs also allege that they were fraudulently induced into loaning money to Rose Hill and defendants, and that that fraudulent inducement was a part of the alleged RICO enterprise.

Second, defendants claim that plaintiffs have failed to assert that the alleged RICO enterprise has engaged in or affected interstate commerce as required by 18 U.S.C. § 1962. Again, the Court must look to the amended complaint in the light most favorable to plaintiffs. Plaintiffs allege at least two actions which affect interstate commerce: the transfer of funds to foreign corporations, and the unauthorized purchase and sale of securities through the alleged Kidder Peabody accounts. These are transactions which, as alleged, affect interstate commerce and are thus cognizable under RICO.[9] *Cf. Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.), *vacated and remanded*, — U.S. —, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *reaffirmed, by order dated Sept. 15, 1989*, 893 F.2d 1433 cert. denied, — U.S. —, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

Third, defendants assert that "[p]laintiffs [sic] complaint fails to allege a 'person' distinct from an 'enterprise'." Defendants' Memorandum of Law at 35. Defendants are correct that a defendant in a RICO action may not at once be a "person" allegedly associated with the alleged enterprise and that enterprise itself. This is a somewhat metaphysical requirement, but one that, upon examination of the case law, is quite clear. A plaintiff may not claim that a corporation is the "person" associated with the enterprise taking the illegal actions and at the same time allege that that corporation is the enterprise taking the illegal actions. For example, in *Bennett v. United States Trust Co. of New York*, 770 F.2d 308 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), plaintiff asserted that U.S. Trust was the "person" acting unlawfully under RICO and also the enterprise through which the illegal actions were taking place. The Court held "that under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." 770 F.2d at 315. Additionally, the fact that the alleged enterprise is not itself an organized business is not fatal to plaintiffs' claims. *Ocean Energy II v. Alexander & Alexander*, 868 F.2d 740, 748 (5th Cir.1989). *See also, Jim Forno's Continental Motors, Inc. v. Subaru Distribs. Corp.*, 649 F.Supp. 746, 750 (N.D.N.Y.1986) (distributor and group of dealers who associated for the purpose of falsifying sales report constituted a RICO enterprise).

The issue for the Court, then, is whether the persons and the enterprise alleged are distinct. The Court finds that, based on the amended complaint, plaintiffs have made the sort of distinction required by the law. The defendants individually are the "persons" required under 18 U.S.C. § 1962(c). None of those persons are also the alleged enterprise. Indeed, under plaintiffs' theory of the case as the Court

---

**8.** Defendants further assert that if they are successful in showing that relief cannot be granted under RICO, then the case must be dismissed in its entirety for want of jurisdiction. Defendants appear to overlook that plaintiffs have also asserted the presence of diversity jurisdiction under 28 U.S.C. § 1332. Defendants do not challenge the presence of complete diversity. Accordingly, regardless of the presence of federal question jurisdiction, the case cannot be dismissed for lack of subject matter jurisdiction at this time.

**9.** The Court also notes that plaintiffs have alleged a number of separate acts with the purported RICO scheme. For the purposes of this motion, the assertion of multiple acts is sufficient to meet the pattern requirement of 18 U.S.C. § 1961(5). *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

understands it, these "persons" have joined together to defraud plaintiffs through a pattern of racketeering activity including mail, wire and tax fraud. This "enterprise" was allegedly separate and distinct from the legitimate actions of the defendants. A RICO enterprise need only be "a group of persons associated together for a common purpose of engaging in a course of conduct ... [and] ... is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Plaintiffs have made just such an allegation on the face of their amended complaint. They allege that the various defendants have acted together as a continuing unit to dissipate the assets of Rose Hill and to defraud plaintiffs. Accordingly, the Court finds that for the purpose of this motion, plaintiffs' RICO claims cannot be dismissed.

Defendants also assert that plaintiffs have both failed to join an indispensable party and have failed to state a claim sufficient for a derivative action. Defendants' challenge of plaintiffs' standing to bring a derivative action is two-fold. First, defendants assert that the only reason plaintiffs have come to federal court, and thus fall under the ambit of Fed.R.Civ.P. 23.1 regarding derivative actions, is to avail themselves of the treble damages remedy available under RICO. This is nothing more than a repeat of defendants' argument that, absent the RICO claim, this Court would not have jurisdiction. That assertion needs no further comment from the Court.[10]

■ Defendants' second contention is that plaintiffs no where indicated that they had made a demand on the corporation prior filing their derivative action.[11] De-

fendants are correct that, in general, shareholders must make a demand on the Board of Directors prior to bringing a derivative action. N.Y.Bus.Corp.L. § 626 regulates the use of derivative actions in New York State. Section 626(c) requires that "[i]n any such action, the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reason for not making such an effort." Defendants appear to read this as an absolute requirement. It is not. "It has long been established ... that such a demand may be excused if it would be an idle gesture ... where it would be directed to the very persons against whom relief is sought. A demand would be particularly futile where '[a]cting officially, the board, qua board, is claimed to have participated or acquiesced in assertedly wrongful transactions.'" *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 262 (2d Cir.1984), *quoting Barr v. Wackman*, 36 N.Y.2d 371, 379, 368 N.Y.S.2d 497, 506, 329 N.E.2d 180, 187 (1975). The Board of Directors consists only of Silver and Brown. Plaintiffs have supplied an affidavit from Silver indicating her support of the instant action. A demand on Brown, arguably the lead defendant in this action, would fall in the category of just the sort of futile demand considered unnecessary by the Second Circuit. Thus, the Court cannot find at this time that plaintiffs' failure to make a demand upon the corporation to be fatal to their pleading a derivative action.

Defendants' final contention in that plaintiffs have failed to name an indispensable party, namely Rose Hill. It is the first portion of defendants' argument that in an action in which relief is sought that will be imposed on the corporation, it is essential that that corporation be a party to the action in order to be subject to the orders of the Court. Given the Court's refusal to dismiss the derivative portion of the com-

---

**10.** It is important to note that plaintiffs did not have to come to federal court in order to avail themselves of the remedies procurable under RICO. It has recently been held that New York State courts have concurrent jurisdiction with federal courts over civil RICO claims. *Simpson Electric Corp. v. Leucadia Inc.*, 72 N.Y.2d 450, 534 N.Y.S.2d 152, 530 N.E.2d 860 (1988).

**11.** One of defendants' attacks on plaintiffs' pleadings is that the allegations were not verified as required by Fed.R.Civ.P. 23.1. The Court notes that plaintiffs' amended complaint is verified, thus resolving any concern regarding verification.

plaint, defendants' assertion is moot. Rose Hill is a party to this action, aligned as a plaintiff, and is thus subject to the orders of the Court.

Defendants also claim that when equitable relief is sought against an entity, it must be named as a party defendant. Defendants rely on *Mutual Shares Corp. v. Genesco*, 266 F.Supp. 130 (S.D.N.Y.), *aff'd in part, rev'd in part*, 384 F.2d 540 (2d Cir.1967), for this proposition. In *Genesco*, plaintiff shareholders sued the new owners of a corporation alleging fraud on the shareholders. The action was not brought as a derivative action. The District Court found that no federal question existed, and that as a diversity action, the underlying corporation was an indispensable party. Since plaintiffs did not allege a derivative action, the corporation was aligned as a party defendant. *Genesco* is inapplicable here, since there is federal question jurisdiction, and the corporation, Rose Hill, is in the action on derivative status. The Court thus finds that the action cannot be dismissed for failure to join and indispensable party pursuant to Fed.R.Civ.P. 12(b)(7) and 19.

### CONCLUSION

Based on the above findings and discussion, the order of the Court in this matter entered into the record on January 3, 1990, the transcript of which is attached as Appendix A, is confirmed in its entirety.

The parties are ordered to proceed with discovery on the case in chief in a regular manner.

The parties are further ordered to appear for a regular status conference before the Court on March 16, 1990 at 2:00 pm in Courtroom 36 of the United States Courthouse, Foley Square, New York, New York.

SO ORDERED.

### APPENDIX A
### DECISION OF THE COURT
January 3, 1990

THE COURT:

I. Preliminary Injunction:

With respect to the case-in-chief, plaintiffs requested an injunction which would, in essence, freeze the assets of Rose Hill Property Assoc. Inc. ("Rose Hill") and prevent their dissipation. Such a broad and intrusive preliminary injunction appears unwarranted under the circumstances of this case. I earlier indicated that preliminary injunction is an extraordinary and drastic remedy which should not be routinely granted. *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (Second Circuit 1977); see *Buffalo Courier–Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 59 (Second Circuit 1979).

Thus, the court hereby orders a narrower injunction similar to the temporary restraining order entered by Judge John E. Sprizzo and confirmed and extended by this court, as follows:

1) All checks from Rose Hill in amounts greater than $1,500 be countersigned by Howard Adler;

2) Howard Adler and all members of the Rose Hill board of directors should be notified in writing of all proposed leases, sales, and opening of all banking or other transactional accounts involving Rose Hill, including investment accounts;

3) Howard Adler should be given ten days from receipt of notification to object to any of the above actions referred to in paragraph 2;

4) Howard Adler should not unreasonably withhold approval of the above actions and transactions; and

5) any violations of the above order shall subject the violators in this action to possible sanctions, including possible payment of the other side's attorney's fees, and a possible finding of contempt of court.

II. Request for attachment:

Plaintiffs' demands for order of attachment of defendants' property should be denied.

III. Request for receiver:

Plaintiffs' request for the appointment of a receiver to operate Rose Hill should be denied. Similar to the considerations in

denying the preliminary injunction request, the Second Circuit has given guidance to the district courts that the appointments of receivers are an extraordinary remedy which should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in property. *Republic of the Philippines v. New York Land Co.*, 87–7498 [852 F.2d 33] (Second Circuit 1988) quoting Wright and Miller, Federal Practice and Procedure, Section 2983.

IV. Motion to dismiss:

Defendants' motion to dismiss should be denied on the present record.

Within a few days I will be issuing a written opinion which will fulfill my responsibilities under Rule 52(a) to recite the findings of fact and conclusions of law so that the order I have entered today will have a foundation in law and fact. I merely entered it today because of our restrictions with regard to further extensions of the temporary restraining order, either by stipulation or by the court. I thought it was appropriate for me to do something today. So that's where we are.

Is there anything counsel wishes to put on the record?

MR. GUILLORN: Your Honor, just a minor point to clarify. As far as the motion for a temporary receiver, that is denied without prejudice to bring a new one if new facts come up, is that correct?

THE COURT: I think that any order is necessarily subject to unexpected developments which would cause the court to reconsider, and that would be within a year under Rule 60, wouldn't it?

All right. Good.

MR. GUILLORN: Thank you, your Honor.

THE COURT: I will so order the transcript.