OPINION OF THE COURT
Bertram Katz, J.
A motion for reargument based on an intervening change in the law may be made even after the time to appeal the prior order has expired, where the prior order can still be reviewed by the appellate court as part of an appeal from a later final judgment. (Foley v Roche, 86 AD2d 887.) Accordingly, this court is constrained to grant plaintiffs’ reargument of its cross motion, previously denied in this court’s order entered March 30, 1987, and upon reargument grants leave to plaintiff to serve a second amended complaint in the form annexed to the moving papers, asserting a cause of action based on the Federal Racketeer Influenced and Corrupt Organizations Act (18 USC § 1961 et seq. [RICO]).
The plaintiff Riverbay Corporation (Riverbay) is the owner and operator of the housing complex known as "Co-Op City” in which approximately 55,000 people reside. This action arises out of the alleged racketeering activities of the defendant in connection with the "Co-Op City Construction Defect Program”. Riverbay hired defendant George Steiner to manage this project in July 1978. Steiner was terminated as project manager in October 1981 amidst allegations of mismanagement after it came to light that he had awarded an unusual number of contracts on an "emergency basis” without competitive bidding to several contractors, including defendants Kaswol Construction Corp. (Kaswol) and Richard L. Kashinsky (Kashinsky).
In March 1983, the New York State Commission of Investí *533 gations issued a report which amplified these allegations against Mr. Steiner, and revealed that he had made substantial deposits and withdrawals in his 24 bank accounts in amounts that far exceeded his $52,000 annual salary. That same month Riverbay commenced the instant action solely against defendant George Steiner, alleging bribe taking from unidentified parties doing business with Riverbay, and seeking an accounting and money damages.
In 1986, criminal charges were filed by the Internal Revenue Service against defendants George Steiner, Olga Steiner, James Dougherty, Murray Marcus and Harris Glasser alleging that a bribery scheme existed in which George Steiner had received illicit payments from Kaswol, JBJ Flooring Co., Ace Pump Corp., Chalgo Supply Company, Inc., and Bestall Chemical Corp. On or about June 1986, Riverbay amended its complaint as of right to assert causes of action against the defendants named in the Federal court action alleging fraud, unjust enrichment, and RICO violations. Shortly thereafter, defendants George Steiner and Kashinsky entered pleas of guilty in the Federal court actions, admitting that cash "kickbacks” had been paid by Kashinsky and other contractors to George Steiner.
In October 1986, the defendants Kaswol and Kashinsky moved inter alia to dismiss the first cause of action, the RICO claim, asserted in the amended complaint upon the grounds that it was insufficiently pleaded and upon the further grounds that State courts lacked jurisdiction over such claims. Riverbay, impliedly recognizing the insufficiency of the RICO pleadings, cross-moved for permission to serve a second amended complaint correcting any alleged deficiencies in the RICO pleading.
This court, on March 25, 1987 (the March 1987 order), dismissed the RICO cause of action on authority of the First Department holding in Greenview Trading Co. v Hershman & Leicher (108 AD2d 468 [1985]). In Greenview it was held that Federal courts have exclusive jurisdiction over civil RICO claims.
Riverbay filed a timely notice of appeal, but did nothing to perfect the appeal within the nine-month period set forth in Rules of the Appellate Division, First Department (22 NYCRR) § 600.11 (a) (3). The plaintiff alleges that its decision not to perfect was solidified in May 1987, when the First Department reaffirmed its Greenview holding in Bukhatir MacKinnon v Sarfraz (130 AD2d 358).
*534 In a decision dated October 25, 1988, however, the Court of Appeals effectively overruled Greenview (supra), ruling in Simpson Elec. Corp. v Leucadia, Inc. (72 NY2d 450) that State courts have concurrent jurisdiction with the Federal courts over civil RICO claims. Ironically, or perhaps typically, given the turbulnt history of RICO litigation to date, the Simpson court after finding that State courts had jurisdiction, went on to dismiss the RICO complaint for insufficiency based on a Second Circuit holding in Beauford v Helmsley, which has itself been effectively overruled en banc by the Second Circuit. (See, Beauford v Helmsley, 843 F2d 103, vacated and remanded 865 F2d 1386.)
In the wake of this unseemly spectacle of appellate courts riding madly off in all directions, Riverbay seeks reargument of the motion and cross motion dismissing the RICO cause of action in spite of the general rule that a motion for reargument must be made before the time in which to appeal the original order has expired. Opposition has been submitted herein only from defendants Kaswol, Kashinsky and Ace Pump Corporation, which allege, in addition to untimeliness, that reargument is barred on principles of judicial economy and the law of the case doctrine, that the Statute of Limitations bars the assertion of RICO claims, that the plaintiff’s proposed second amended complaint fails to sufficiently state a claim under RICO, and that defendants will suffer substantial prejudice by the granting of plaintiff’s application at this late date.
REARGUMENT
The usual rule prohibits the making of a motion for reargument beyond the time to file a notice of appeal. Riverbay, as it must, concedes the technical untimeliness of this application.
An exception to this rule, however, is enunciated in Foley v Roche (86 AD2d 887, lv denied 56 NY2d 507, supra), which held that, in this context of a motion for reargument based on an intervening change in the law, an untimely reargument of a prior determination that is clearly erroneous, and which is reviewable on appeal from any prospective judgment, should be granted by the lower court rather than subject the parties to the expense of trial and further appeals to obtain a preordained outcome. (Citing Malnati v Metropolitan Life Ins. Co., 254 App Div 681.) The doctrine of "law of the case”, which has as its purpose the fostering of orderly convenience, will be *535 ignored under these extraordinary circumstances in furtherance of judicial economy. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2221:8, at 158.)
The question therefore becomes whether this court’s earlier order was a nonfinal order, or conversely, a final order upon which a final judgment could have been entered by defendants. The defendants claim that this court’s March 1987 order expressly or impliedly severed the RICO cause of action from the complaint and dismissed it, thereby rendering said order nonreviewable upon a final appeal of this action. By this interpretation the defendants assert that Riverbay has missed its opportunity to obtain reversal of the March 1987 order, and that no further appeal will be allowed.
The court finds that the order in question is not susceptible to such a construction. Severance of a dismissed cause of action is implied and the dismissal is final when the dismissed causes of action are not inextricably interrelated with the cause or causes of action still pending. Put another way, where the dismissed and pending causes of action present different legal issues and arise out of different transactions, they are impliedly severed. (Orange & Rockland Utils. v Howard Oil Co., 46 NY2d 880; Lizza Indus. v Long Is. Light. Co., 36 NY2d 754.) In the instant matter, a perusal of the first amended complaint indicates that the RICO cause of action is merely an alternative form of relief for the same transactions complained of in the balance of the complaint, i.e., the alleged bribery scheme. In view of the fact that the dismissed RICO cause of action is not factually discrete from the surviving balance of the first amended complaint, the doctrine of implied severance is not applicable. The March 1987 order must therefore by this standard be considered a nonfinal order that is reviewable on appeal from the final judgment of this matter. (See also, Behren v Papworth, 30 NY2d 532.)
Another aspect of the defendants’ judicial economy argument has been posited, in which the Uniform Rules are implicated. Montalvo v Nel Taxi Corp. (114 AD2d 494) is cited to the court, wherein it was held that, on an appeal from an intermediate order that is dismissed on the motion of the appellate court, the party is estopped for reasons of judicial economy from seeking review of issues which could have been raised on the original appeal. (Bray v Cox, 38 NY2d 350.)
However, the court does not believe that Montalvo
*536 (supra) applies. The Montalvo case, as well as the other cases cited by defendants in this context, concerns the issuance of an order of dismissal by the Appellate Division pursuant to 22 NYCRR 600.12 (b) for failure to prosecute. However, what is involved in the instant Riverbay matter is 22 NYCRR 600.11 (a) (3), in which the Clerk of the First Department is directed not to place a civil appeal on the calendar where the appeal is not perfected within nine months. In the case of Montalvo, there is clear justification for not allowing a further appeal of a matter where the Appellate Division has already affirmatively provided an adjudication of the motion. (Bray v Cox, 38 NY2d 350, 355, supra.) In the instant matter, Riverbay’s passive act of allowing an appeal to lapse should not have similar consequences, and no authority has been cited to the court that supports defendants’ position in this regard. It is particularly difficult to support the proposition that the "failure to perfect” provision of 22 NYCRR 600.11 (a) (3) should be considered an order of dismissal when no such language appears in that provision, an omission of more than passing significance, and a glaring contrast to the explicit dismissal provisions of 22 NYCRR 600.12 (b) and (c). (See also, Ferrizz v Jahelka, 125 AD2d 537.)[1]
The court therefore concludes that plaintiff has demonstrated that the March 30, 1987 order was a nonfinal order that is reviewable upon the final appeal of this action. (Craft v Minicucci, 120 AD2d 990; Austrian Lance & Stewart v Jackson, 50 AD2d 735.)[2]
*537 RICO
It remains for the court to review the objections of the defendants to the amendment of the complaint at this late stage of the proceedings, and the sufficiency of the proposed amended complaint.
RICO § 1962 (c) makes it unlawful, in pertinent part, "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity” (18 USC § 1962 [c]). The terms "enterprise”, "person”, "racketeering activity”, and "pattern of racketeering activity” are defined in 18 USC § 1961, in pertinent part, as follows:
"(1) 'racketeering activity’ means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement) * * * section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering) * * *
*538 "(3) 'person’ includes any individual or entity capable of holding a legal or beneficial interest in property;
"(4) 'enterprise’ includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
"(5) 'pattern of racketeering activity’ requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter, and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity” (18 USC § 1961 [1], [3], [4], [5]).
As previously stated, the plaintiff alleges an extensive scheme of bribery in which illicit payments in the form of cash kickbacks were made to defendant George Steiner from defendants Kaswol, JBJ Flooring Co., Ace Pump Corporation, Chalgo Supply Company, Inc., and Bestall Chemicals in the amount of 10% of the contract amounts in consideration for the illegal granting of contracts without competitive bidding. It is claimed these kickback amounts were billed to and paid by Riverbay continuously from 1979-1982 without Riverbay receiving any consideration and that fictitious invoices were prepared by George Steiner to cover up his illegal acts. It is claimed that the defendants, together with Riverbay, constituted an "enterprise” as defined in 18 USC § 1961 (4), such enterprise being known as the "Co-Op City Construction Defect Repair Program”. The affect on interstate commerce alleged in the complaint is the purchase and sale of building materials including floor tiles, copper wire and cable, and valves. The racketeering activity alleged includes commercial bribery (Penal Law §§ 180.03, 180.08), mail fraud (18 USC § 1341) and extortion (Penal Law § 155.05).
STATUTE OF LIMITATIONS
The court will not long dwell on defendants’ contention that the assertion of the RICO cause of action is barred by the four-year Statute of Limitations. (Agency Holding Corp. v Malley-Duff & Assocs., 483 US 143, 147.) Although the violations complained of herein allegedly occurred between January 1979 and March 1982, and the first complaint alleging RICO violations was not served until June 1986, no factual basis for the instant allegations of bribery and kickbacks emerged until the Government prosecutors filed criminal com *539 plaints in 1986. Prior to that time, in 1982, there may have been good cause to believe, based on the report of the New York State Commissioner of Investigations, that there was mismanagement and probable theft on the part of defendant George Steiner, but nothing more. The alleged involvement of the other defendants in the bribery scheme was not disclosed until the filing of criminal complaints in February 1986. As such, the plaintiff Riverbay should not reasonably be charged with knowledge of the RICO violations until February 1986, when the Statute of Limitations began to run. (Beneficial Std. Life Ins. Co. v Madariaga, 851 F2d 271, 274-276; Bankers Trust Co. v Rhoades, 859 F2d 1096 [2d Cir 1988].) Therefore the four-year Statute of Limitations does not bar the bringing of this action.[3]
THE SUFFICIENCY OF THE COMPLAINT
The defendants allege that the civil RICO cause of action, as pleaded in the second amended complaint, is insufficient. As noted above, the four major elements of a RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. (Sedima S.P.R.L. v Imrex Co., 473 US 479, 496.)
The major thrust of defendants’ argument is that "racketeering activity” is inadequately pleaded. Paragraph 52 of the second amended complaint alleges that the defendants used the United States mails to further their fraudulent schemes in violation of the Federal mail fraud statute, paid and received commercial bribes in violation of Penal Law § 180.00 et seq., and committed extortion in violation of Penal Law § 155.05 et seq. Putting aside the conclusory allegations of mail fraud and extortion, it is clear that multiple acts of bribery are specified in the second amended complaint from paragraphs 19 through 41 in which it is alleged that defendants paid bribes to George *540 Steiner to obtain contracts and submitted inflated invoices to recoup their expenses. There has been little or no discovery conducted in this matter, and the sources of the allegations contained in the complaint are the minutes of the guilty pleas taken by some of the defendants. The court finds this element to be sufficiently pleaded by the lights of CPLR 3013 and 3016 (b) and finds the claim of the defendants that they are not sufficiently appraised of the specific acts of wrongdoing to be a highly dubious one. The fact that the second amended complaint may contain a preponderance of conclusory allegations is not fatal to the pleading provided that there are sufficient allegations which give notice of the occurrences intended to be proved and the material elements of the causes of action. (Holzer v Feinstein, 23 AD2d 771.)
The plaintiff has also sufficiently alleged the existence of an "enterprise”, in this case, the "Co-Op City Construction Defect Repair Program”, and a nexus between the pattern of racketeering activity and that enterprise. As to the defendants’ allegations that the second amended complaint insufficiently pleads that the "enterprise is continuing with racketeering activity” (Simpson Elec. Corp. v Leucadia, Inc., 72 NY2d 450, 462-464, supra) it is apparent from a reading of Beauford v Helmsley (865 F2d 1386 [2d Cir 1989], supra) that there no longer is such a pleading requirement: "[W]e conclude * * * that a RICO pattern may be adequately pleaded without an allegation that the scheme pursuant to which the racketeering acts were performed is an ongoing scheme having no demonstrable ending period * * *. What is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic” (865 F2d, supra, at 1391). As previously stated, the Court of Appeals in deciding Simpson Elec, relied in this context on the earlier decision in Beauford v Helmsley (843 F2d 103 [2d Cir 1988], supra) which was vacated in the just-quoted 1989 decision. As to the "pattern” element, it is clear that the acts of bribe paying and receiving were numerous and extensive over a five-year period from 1978-1982, and were not scattered or isolated. It is significant in this regard that in Beauford v Helmsley (865 F2d 1386, supra), a contemporaneous mailing of a single allegedly fraudulent condominium conversion offering plan to tenants of 8,286 apartments was held to constitute a "pattern” of racketeering activity in *541 that each piece of mail was a separate indictable offense, and there was reason to believe that similar fraudulent mailings would be made over an additional period of years. In the instant matter, there is not only reasonable cause to believe that the fraudulent acts if not detected would have continued, but criminal convictions evidencing a series of fraudulent acts over a period of years, all with a single goal. As such, the "continuity” and "pattern” requirements are satisfied.
Finally, plaintiff has properly alleged for pleading purposes an affect on interstate commerce in paragraph 51 of the second amended complaint in that the purchase and sale of articles such as electrical copper wires, cable and building materials by defendants had an affect on interstate commerce.
PREJUDICIAL DELAY
The last weapon in defendants’ arsenal is a type of laches argument, in that it is contended that Riverbay has unreasonably delayed the instant motion to amend the pleadings, to the defendants’ prejudice.
The court finds that the plaintiffs have not been guilty of dilatory conduct in that the first assertion of RICO claims against defendants was raised in June 1986, soon after the criminal indictment exposing the bribery schemes was filed. In October 1987, the plaintiff cross-moved to amend the pleadings in respect to the RICO violations, but such amendment did not substantially alter the allegations in respect to the transactions complained of. Instead, plaintiff has merely provided greater specificity in its second amended complaint in an attempt to comply with the fluctuating pleading requirements of the RICO law. The balance of the delay following the dismissal of the RICO cause of action by this court in March 1987 has been caused by the lengthy process of appellate resolution of the jurisdictional issue, which was finally laid to rest by the Court of Appeals in Simpson Elec, (supra) on October 25, 1988. Shortly thereafter, the instant motion was served on plaintiffs on or about February 2, 1989. No substantive allegations of prejudice have been raised by defendants, aside from a supposed inability to raise the Statute of Limitations as a defense, an argument which has been previously disposed of. The defendants have therefore not met their burden on this aspect of the motion. (Leslie v Hymes, 60 AD2d 564.)
*542 The court finds that defendants have not demonstrated that the instant motion should be barred by reason of unreasonable or unexplained delay, or prejudicial surprise.
The court has carefully considered the other contentions of the defendants, but finds them to be without merit.
The plaintiffs motion is granted in all respects.

. Indeed, if a direction to a clerk not to calendar a motion (Rules of App Div, 1st Dept [22 NYCRR] § 600.11 [a] [3]) is equivalent to an order of dismissal (22 NYCRR 600.12 [b]), as contended by defendants, then one would be obliged to inquire as to how the existence of the latter provision can be justified.

. Without any citation to authority, defendant Ace Pump Corporation (Ace Pump) asserts that the Court of Appeals never explicitly ruled that its holding in Simpson Elec. Corp. v Leucadia, Inc. (72 NY2d 450) was to be applied retroactively, and as such, that the reversal of this court’s March 30, 1987 order on appeal is not a foregone conclusion. However, the presumption to be applied is contrary to Ace Pump’s position. Generally speaking, a change in decisional law will usually be applied retroactively to all cases still in the normal litigating process. A finding of nonretroactivity is the exception, not the rule. Such exceptional circumstances exist when there has been such a sharp break in the continuity of law that its impact will wreak more havoc in society than society’s interest in stability will tolerate, such as where there is strong evidence of reliance on the law superseded by the new pronouncement. (Gager v White, 53 NY2d 475.) The question of reliance aside, as there is no evidence of same, it is also clear that the Court *537 of Appeals decision in Simpson does not represent a sharp break in the law. To the contrary, it appears that the question addressed here resulted in an even split amongst the courts that had considered the question. (Simpson Elec. Corp. v Leucadia, Inc., 72 NY2d 450, 455.) Therefore, to the limited extent that retroactivity has been raised by defendants the court finds this contention to be without merit. (See also, People v Loria, 10 NY2d 368.)

. [4] As was seemingly the case with every other aspect of RICO, the question of which Statute of Limitations should be applied, and the point at which a civil RICO action accrues and the statute begins to run, were matters susceptible to wildly varying holdings. (Compare, Bankers Trust Co. v Feldesman, 648 F Supp 17 [SD NY 1986], with Estee Lauder v Horco Graphics, 621 F Supp 689 [SD NY 1984].) The law as it now stands in this Circuit, pursuant to Bankers' Trust Co. v Rhoades (859 F2d 1096 [2d Cir 1988]), provides that a four-year Statute of Limitations applies to all civil RICO actions regardless of the predicate act involved (Agency Holding Corp. v Malley-Duff & Assocs., 483 US 143) and that such Statute of Limitations begins to run at the time the plaintiff discovers or should have discovered the injury caused by the defendant.