A95A0791. COBB COUNTY v. JONES GROUP P.L.C. et al.
A95A0792. WALTON v. COBB COUNTY.
A95A0793. GREENLEES et al. v. COBB COUNTY.
A95A0794. ENVIROQUIP, INC. et al. v. COBB COUNTY.
A95A0795. WICKLIFFE COMPANY v. JONES GROUP P.L.C.
et al.
A95A0796. GREENLEES et al. v. WICKLIFFE COMPANY.
A95A0797. WALTON v. WICKLIFFE COMPANY.
A95A0798. ENVIROQUIP, INC. et al. v. WICKLIFFE COMPANY.
A95A0799. MAYES, SUDDERTH & ETHEREDGE, INC.
v. JONES GROUP P.L.C. et al.
A95A0800. WALTON v. MAYES, SUDDERTH & ETHEREDGE,
INC.
A95A0801. GREENLEES et al. v. MAYES, SUDDERTH &
ETHEREDGE, INC.
A95A0802. ENVIROQUIP, INC. et al. v. MAYES, SUDDERTH &
ETHEREDGE, INC.
(460 SE2d 516)

BLACKBURN, Judge.
This appeal is a combination of three related actions filed under the Georgia RICO Act, OCGA § 16-14-1 et seq., concerning the development of water treatment facilities in Cobb County, Georgia. The issues on appeal arise from the trial court's grant or denial of motions to dismiss filed by various defendants in the underlying actions.

*Case Nos. A95A0791, A95A0795 and A95A0799*

1. Appellants, Cobb County, Georgia, The Wickliffe Company, and Mayes, Sudderth & Etheredge, Inc., appeal the trial court's grant of defendants', The Jones Group, P.L.C., Jones U. S. Holdings, Inc., and Jones Environmental, Inc. (referred to collectively as the Jones defendants), motions to dismiss for lack of personal jurisdiction. "Our precedents establish that a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that defendant[s] can be subjected to the jurisdiction of the court. To demonstrate that the court lacks jurisdiction, defendant[s] may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant[s'] evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. . . . [I]f a motion is decided on the basis of the

written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard." (Citations and punctuation omitted.) *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539, 540 (428 SE2d 435) (1993).

In the present case, jurisdiction over the non-resident defendants allegedly was conferred pursuant to OCGA § 9-10-91 (1), (2) and (3). Based upon the allegations in the complaint, personal jurisdiction of the Jones defendants, if any, rests upon the jurisdiction of Enviroquip, Inc. and Escor, Inc., which have transacted business in Cobb County, Georgia. Enviroquip's and Escor's employees, agents, and directors, Bill Walton, Jack Greenlees, and Jim Porteous, allegedly committed acts in Georgia constituting RICO violations. The complaints further alleged: (1) the defendant The Jones Group, P.L.C. is a corporation organized and existing under the laws of the Republic of Ireland, and is a successor corporation or owner of defendants Enviroquip, Inc. and Escor, Inc.; (2) the defendant Jones U. S. Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware, is a wholly-owned subsidiary of defendant The Jones Group, P.L.C., and is a successor corporation or owner of defendants Enviroquip, Inc. and Escor, Inc.; and (3) the defendant Jones Environmental, Inc. is a wholly-owned subsidiary of or owner of defendants Enviroquip, Inc. and Escor, Inc.

In support of their motions to dismiss, the Jones defendants averred that The Jones Group, P.L.C., an Irish company, invested in companies through Jones U. S. Holdings, Inc., a Delaware corporation, which acted as a holding company for The Jones Group's American holdings. All of the issued common stock of Jones U. S. is owned by The Jones Group, P.L.C. Jones U. S. acts solely as a holding company, owns no real property, and does not carry on any business activity. From mid-1987 until late 1992, Jones U. S. owned all the shares of Enviroquip, Inc., a Delaware corporation. A controlling interest in Delaware Enviroquip was sold to a management buy-out group in December 1992. From October 1987 to December 1991, Escor, Inc., a Delaware corporation, was a wholly-owned subsidiary of Jones U. S.

Jim Porteous averred that he was a director of Enviroquip and Escor, president and a director of Jones Environmental, president and a director of Jones U. S., and until the end of 1992, a director of The Jones Group, P.L.C. Porteous averred that no profits, dividends or revenues were ever paid by Enviroquip to any of the Jones defendants, as it was not profitable enough to pay such from its formation in July 1987 until it was sold at the end of 1992.

Jones Environmental, a wholly-owned subsidiary of Jones U. S., engages in environmental engineering in the United States, and is

headquartered in Austin, Texas. Jones Environmental has never had any role or involvement in any project for or related to Cobb County, Georgia. Jones Environmental has never been a successor to or owner of any entity called Enviroquip, Inc. or Escor, Inc.

In *Coca-Cola Co. v. Procter & Gamble Co.*, 595 FSupp. 304, 308 (N.D. Ga. 1983), the court held "that neither the Due Process Clause nor traditional notions of fair play and substantial justice preclude the exercise of personal jurisdiction over a parent corporation if the parent's control over the subsidiaries' activities is so complete that, the subsidiary is, in fact, merely a division or department of the parent." In the present case, there is no evidence indicating the Jones defendants exercised any control over Enviroquip or Escor. The existence of Porteous as an officer and director of various subsidiaries is the only fact presented of common personnel between the companies.

The unrebutted affidavits supporting the Jones defendants' motion to dismiss establish that they did none of the acts set forth in the Long Arm Statute which would subject them to the personal jurisdiction in Georgia.[1] Under these circumstances, we agree with the trial court's well-written order, that the Jones defendants lacked the minimum contacts with Georgia that due process requires prior to the exercise of personal jurisdiction.

*Case Nos. A95A0794, A95A0798, and A95A0802*

Escor and Enviroquip cross appeal the trial court's denial of their motion to dismiss the complaints brought against them by Cobb County, The Wickliffe Company, and Mayes, Sudderth & Etheredge.

The complaints alleged that Greenlees began representing a Texas company called Enviroquip, in the early 1980s. Enviroquip's primary business was the design, manufacture, and sale of products and equipment used in water and wastewater treatment facilities. Bill Walton was the president of this Texas company. The complaints contain allegations that Greenlees and Walton worked closely together for many years conspiring to illegally manipulate the procurement process for equipment used in water and wastewater treatment plants. In 1987, Jones U. S. purchased the assets of the Texas com-

---

[1] OCGA § 9-10-91 provides in part: "A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

pany called Enviroquip, and continued its business under a company also named Enviroquip, but one that was incorporated in Delaware. According to the allegations contained in the complaints, after the purchase, Walton continued to work with the new Enviroquip in much the same capacity, at least, from the perspective of the company's customers.

Escor's primary business was to provide engineering services, including designing water and wastewater treatment facilities, particularly those implementing Enviroquip's equipment. The complaints allege that Walton was a director, managerial officer or employee, agent shareholder and/or representative of Escor. However, Porteous averred that Escor was a Delaware corporation incorporated on October 1, 1987, as a wholly-owned subsidiary of Jones U. S. Escor, which was dissolved in December 1991, never was a subsidiary of any entity called Enviroquip. Porteous further averred that, "upon information and belief, any dealings with Cobb County by an 'Escor' prior to October 1987 must have been by a Texas corporation called 'Escor, Inc.,' which was at some time an affiliate of Texas Enviroquip. Delaware Escor was not related to Texas Enviroquip . . . or the Texas Escor." Porteous' affidavit did not address the capacity, if any, in which Walton worked for Escor.

2. Initially, Enviroquip and Escor contend the complaints brought against them failed to state a claim upon which relief could be granted. "When the sufficiency of the complaint is questioned by a motion to dismiss for failure to state a claim for which relief may be granted, the rules require that it be construed in the light most favorable to the plaintiff with all doubts resolved in his favor even though unfavorable constructions are possible. Not unless the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts should the complaint be dismissed." (Citations and punctuation omitted.) *Time Ins. Co. v. Fulton-DeKalb Hosp. Auth.*, 211 Ga. App. 34, 35 (438 SE2d 149) (1993).

Enviroquip and Escor argue that in order to set forth a cause of action under the Georgia RICO statute, the complaint must contain allegations regarding the existence of an "enterprise." The complaint contains allegations that the defendants violated OCGA § 16-14-4 (a), (b) and (c). OCGA § 16-14-4 (a) provides that "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." In *Dover v. State*, 192 Ga. App. 429, 431 (385 SE2d 417) (1989), we determined that a violation of OCGA § 16-14-4 (a) "does not require that there be proof of an 'enterprise,' but only that the accused 'through a pattern of racketeering activity

or proceeds derived therefrom, . . . acquire or maintain, directly or indirectly, any . . . , real property or personal property of any nature, including money.'" See also Kenny and Smith, A Comprehensive Analysis of Georgia RICO, 9 Ga. St. U. L. Rev. 537, 544 (1993).

3. Enviroquip and Escor next argue that the complaint fails to allege any action taken by them, and that they cannot be held responsible for the actions of their employees and agents. Our review of the record convinces us that the trial court appropriately addressed these issues. In its order, it stated: "Although this is a civil suit, RICO predicate acts are criminal offenses. If the court is guided by OCGA § 16-2-22, 'Criminal Responsibility of Corporations,' a corporation may be *criminally* prosecuted as a party to a crime by certain acts of its agents in two situations: (1) where legislative intent clearly imposes criminal liability, (RICO does not contain in its definition any indication of a legislative purpose to impose criminal liability on a corporation) or (2) by certain acts of its directors or managerial officials, OCGA § 16-2-22 (a) (2). *State v. Military &c. Inc.*, 257 Ga. 388, 389 [(360 SE2d 248)] (1987). If the plaintiff can show that Walton performed the predicate acts within the scope of his employment on behalf of the corporation, then defendants thereby engaged in at least two similar or interrelated 'predicate' acts as defined by the statute."

4. Viewed in the light most favorable to the plaintiffs, the complaints adequately address proximate cause and damages.

5. Enviroquip and Escor contend the trial court erred in denying their motion for partial summary judgment, in which they asserted that they could not be held responsible for any racketeering activity prior to their incorporation in 1987. However, if, as alleged, Walton's racketeering activity, completed prior to 1987, provided benefits to Enviroquip and Escor, then they engaged in prohibited activities as outlined in OCGA § 16-14-4 (a).

6. In their final enumeration of error, Enviroquip and Escor contend the trial court erred in accepting plaintiffs' untimely response to their motion to dismiss. However, as our review of the denial of Enviroquip's and Escor's motions to dismiss was de novo, this enumeration of error is moot.

*Case Nos. A95A0792, A95A0797 and A95A0800*

Bill Walton cross appeals the trial court's denial of his motions to dismiss the complaints brought against him by Cobb County, The Wickliffe Company, and Mayes, Sudderth & Etheredge.

7. Initially, Walton contends the complaints brought against him failed to state a claim upon which relief could be granted.

The complaint alleges that Walton, a resident of Texas, was an officer, agent, shareholder, and representative of defendants Escor

and Enviroquip; that he acquired or maintained an interest in or control of real and personal property, including money, through the pattern of racketeering activity described in the complaint; and that he conspired with defendant Greenlees and others to acquire or maintain an interest in or control of real and personal property, including money, through the pattern of racketeering activity described in the complaint. The complaint continues to allege that Walton was aware of and participated in acts of bribery and shared in the profits obtained by those acts. Porteous averred that Walton was not an officer or director of Enviroquip, but merely solicited sales and marketing opportunities after the August 1987 purchase.

"Under the state RICO Act, it is unlawful for anyone to acquire an interest in or control of money or property through a pattern of racketeering activity (OCGA § 16-14-4 (a)), and anyone who is injured by reason of any violation of OCGA § 16-14-4 shall have a cause of action for three times the actual damages sustained (OCGA § 16-14-6 (c)). To establish that defendant engaged in racketeering activity, a plaintiff must show that the defendant committed predicate offenses (set forth in OCGA § 16-14-3 (9)) at least twice." *Maddox v. Southern Engineering Co.*, 216 Ga. App. 6, 7 (453 SE2d 70) (1994). OCGA § 16-14-3 (9) (A) (xiii) defines "racketeering activity" as committing, attempting to commit, or to solicit, coerce, or intimidating another person to commit any crime which is chargeable by indictment under "Code Section 16-10-2, relating to bribery." Furthermore, the RICO act is violated by any person who conspires to engage in a pattern of racketeering. OCGA § 16-14-4 (c).

Construed in the light most favorable to the plaintiffs, we agree with the trial court that the complaints set forth a claim against defendant Walton upon which relief could be granted.

8. Walton contends the trial court erred in denying his motion to dismiss based on the expiration of the statute of limitation. In *Blalock v. Anneewakee, Inc.*, 206 Ga. App. 676, 678 (426 SE2d 165) (1992), we held that the five-year statute of limitation for RICO actions contained in OCGA § 16-14-8 began "to run when the civil RICO cause of action accrues, which we interpret[ed] to mean when the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern."

The trial court determined the complaint involved fraud and excuses for delay in discovering the fraud and, therefore, the question of whether the plaintiffs should have discovered that their injuries were part of a pattern was a mixed question of law and fact which is properly resolved by a jury. See *Ga. Power Co. v. Womble*, 150 Ga. App. 28 (256 SE2d 640) (1979). We cannot agree that the complaint contains specific allegations of fraud relating to the RICO action.

OCGA § 9-11-9 (b) requires that "all averments of fraud or mis-

take, the circumstance constituting fraud or mistake shall be stated with particularity." OCGA § 51-6-2 (a) provides that "willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action." The complaints refer to the use of influence by those persons accepting the bribes, it does not contain specific allegations of misrepresentations of material fact against Walton. The complaints' specific allegations of bribery do not constitute specific allegations of fraud. Compare OCGA § 51-6-2 with OCGA § 16-10-2; cf. *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602 (448 SE2d 737) (1994) (Theft by deception and civil fraud have different elements and are not necessarily proved by the same evidence.).

Walton contends that the complaints set forth sufficient allegations which show that Cobb County, The Wickliffe Company, and Mayes, Sudderth & Etheredge discovered, or reasonably should have discovered, that they were injured and that their injuries were part of a pattern, more than five years prior to the filing of the complaint. However, viewing the complaints in favor of the plaintiffs, we find that Walton has failed to establish his defense of the expiration of the statute of limitation. The fact that criminal indictments were filed against certain parties in 1990 might show the plaintiffs' knowledge; however, the complaints herein were filed within five years of the indictments. See *Riverbay Corp. v. Steiner*, 544 NYS2d 914 (Sup. 1989) (No factual basis for bribery scheme emerged until prosecutors filed criminal complaints.). Nothing in the complaints establishes that the plaintiffs knew or should have known that they were injured *and* that their injuries were the result of a pattern of activities directed against them.

9. In Walton's last enumeration of error, he contends the trial court lacked personal jurisdiction over him and, therefore, should have granted his motion to dismiss. This enumeration is without merit. The allegations of the complaints sufficiently set forth that Walton either committed tortious acts within Georgia or that he committed acts outside of Georgia which caused tortious injury in Georgia. See OCGA § 9-10-91 (2), (3). The trial court correctly denied Walton's motion to dismiss on this ground.

*Case Nos. A95A0793, A95A0796 and A95A0801*

Jack U. Greenlees, individually and d/b/a The Jack U. Greenlees Company & Waste Limited, Inc., The Greenlees Company; Lif-Safe, Inc.; Lorette T. Greenlees; and The Jack U. Greenlees Trust (referred to collectively as the Greenlees defendants) cross appeal the trial court's denial of their motions to dismiss and motion to transfer the complaints brought against them by Cobb County, The Wickliffe

156

Company, and Mayes, Sudderth & Etheredge.

10. The Greenlees defendants contend the trial court erred in denying their motion to dismiss based on the expiration of the statute of limitation. This enumeration is without merit. See Division 8 above.

11. The Greenlees defendants assert the trial court erred in denying their motion to dismiss because the complaint did not contain allegations that any injury was caused "by reason of" violations of the RICO statute.

"[A]ll such motions to dismiss for failure to state a claim should be granted only where a complaint 'shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim.' [Cit.]" *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (372 SE2d 276) (1988). The complaint contains allegations regarding the Greenlees defendants' bribery of Cobb County officials in order to illegally manipulate the bidding and procurement processes relating to Cobb County and its water and wastewater departments. Specifically, the complaint contains the allegation that "[b]y virtue of the preferential treatment which he received as a result of the bribes, including being enabled to package his equipment, Greenlees received grossly excessive profits from Cobb County or from contractors for Cobb County, all to the injury and detriment of Cobb County."

Construed in the light most favorable to the plaintiffs, we agree with the trial court that the complaints set forth a claim against the Greenlees defendants upon which relief could be granted.

12. In their last enumeration of error, the Greenlees defendants allege that the trial court erred in failing to grant Jack U. Greenlees' motion to transfer based upon improper venue. The complaint alleged that Jack U. Greenlees was a resident of Cobb County. Greenlees denied this allegation, and averred that he had resided and maintained his domicile in Bartow County for the past 29 years. In response, the plaintiffs introduced a certified copy of an answer filed by Greenlees, in an unrelated civil action, in which he admitted he was a resident of Cobb County. Greenlees' attorney averred that this admission was made for strategy purposes because the attorney felt Cobb County was a favorable county for Greenlees' counterclaim.[2] Although the trial court recognized a conflict in the facts, it determined that Greenlees' sworn statements supported a finding that venue was proper in Cobb County.

We find that the trial court's findings were not clearly erroneous. See *Alexander v. DeKalb County*, 264 Ga. 362, 365 (444 SE2d 743)

---

[2] This court recognizes that personal jurisdiction can be freely waived by a defendant without the necessity of requiring a party to verify false factual allegations.

(1994).

*Judgment affirmed. Birdsong, P. J., Pope, P. J., Andrews, Johnson and Smith, JJ., concur. Beasley, C. J., McMurray, P. J., and Ruffin, J., concur specially in part and dissent in part.*

McMurray, Presiding Judge, concurring specially in part and dissenting in part.

I respectfully dissent as to Division 1 of the majority opinion affirming dismissal of The Jones Group, P.L.C., the Jones U. S. Holdings, Inc. and Jones Environmental, Inc. ("the Jones defendants") based on lack of personal jurisdiction as it is my view that there is such an alliance of control, identity and purpose between the Jones defendants and Enviroquip, Inc. and Escor, Inc. that the actions of the latter are attributable to the former for purposes of satisfying requirements under Georgia's Long Arm Statute as well as "minimum contacts" requirements of the Due Process Clause of the Fourteenth Amendment. With respect to Division 12 of the majority opinion, I am compelled to concur specially as I agree that Cobb County is the appropriate venue for Jack U. Greenlees as an alleged joint tortfeasor, but I do not agree with the majority's holding that Greenlees waived venue simply by admitting that Cobb County was an appropriate venue for resolving an unrelated divorce action.

1. The evidentiary material relied on by the Jones defendants in support of their motion to dismiss and admissions by the attorney representing the Jones defendants during the hearing on this motion to dismiss reveal that a corporation from the Republic of Ireland known as The Jones Group, P.L.C. sent one of its directors, Jim Porteous, a native of Ireland, to the United States in 1985 for the purpose of developing business in the area of environmental engineering. To this end, Porteous incorporated Jones U. S. Holdings, Inc. as a subsidiary of his Irish principal and then incorporated Jones Environmental, Inc. as a subsidiary to Jones U. S. Holdings, Inc. Porteous set himself up as president and director of both corporations.

In 1987, Porteous formed Enviroquip, Inc. as a second subsidiary of Jones U. S. Holdings, Inc. for the purpose of developing business in the area of environmental engineering. Of course, Porteous was a director of Enviroquip, Inc. and he became president of this subsidiary in 1988. Porteous capitalized Enviroquip, Inc. via acquiring all of the assets of a Texas limited partnership known as Enviroquip, Ltd. These assets included the illegally gained contracts which are subjects of the RICO violations involving defendant Greenlees and allegedly involving defendant Walton.

Porteous then formed Escor, Inc. as a third subsidiary of Jones U. S. Holdings, Inc. This subsidiary was also formed for the purpose of developing environmental engineering in the United States.

Porteous was named as a director of Escor, Inc. and defendant Walton, formerly president of Escor, Inc.'s predecessor corporation (also known as Escor, Inc. and involved in the alleged RICO violations), remained as a sales consultant for Jones U. S. Holdings, Inc.'s newest subsidiary.

In 1992, Jones U. S. Holdings, Inc. transferred all of the stock of its first subsidiary, Jones Environmental, Inc., to its second subsidiary, Enviroquip, Inc., and then sold Enviroquip, Inc. to "a buy-out group" which included Porteous. Thereafter, the actions which form the basis of the cases sub judice were filed and Jim Porteous submitted his affidavit and deposed (in pertinent part) as follows: "Cobb County . . . alleges that 'profits which Enviroquip and Escor derived from their participation in the RICO scheme with Greenlees were channeled up to the Jones Defendants. The Jones Defendants would be hard pressed to deny that allegation, by affidavit or otherwise.' In fact, no profits, dividends or revenues were ever paid by Delaware Enviroquip to any of the Jones Defendants, for the simple reason that Delaware Enviroquip was never, from its formation in July of 1987 until it was sold at the end of 1992, profitable enough to pay a dividend. Thus contrary to plaintiff's allegations, none of the Jones Defendants realized 'great financial gains at the expense of Cobb County.'"

"In 1925 the United States Supreme Court held that a corporation in one state did not subject itself to personal jurisdiction in another state simply because it conducted business in that state through a subsidiary corporation. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634 (1925). However, the holding of this case was substantially refined in *International Shoe Co. v. Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), and more recently the [United States Supreme] Court recognized that '(t)he limits imposed on state jurisdiction by the Due Process Clause, in its role as guarantor against inconvenient litigation has been substantially relaxed over the years.' *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 292, 100 S. Ct. 559, 563, 62 L.Ed.2d 490 (1980). See also *Hanson v. Denckla*, 357 U. S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1952). [Considering this trend, Judge Vining of the United States District Court in the Northern District of Georgia concluded] that the harsh strictures of *Cannon Manufacturing* are no longer applicable [and that] neither the Due Process Clause nor traditional notions of fair play and substantial justice preclude the exercise of personal jurisdiction [under Georgia's Long Arm Statute] over a parent corporation if the parent's control over the subsidiaries' activities is so complete that the subsidiary is, in fact, merely a division or department of the parent. See *Katz Agency, Inc. v. Evening News Association*, 514 F.Supp. 423 (S.D.N.Y. 1981)."

*Coca-Cola Co. v. Procter & Gamble Co.*, 595 FSupp. 304, 307-308 (N.D. Ga. 1983).

The majority holds that the Jones defendants "did none of the acts set forth in the Long Arm statute which would subject them to . . . personal jurisdiction in Georgia" and relies on averments that "no profits, dividends or revenues were ever paid by Enviroquip to any of the Jones defendants"; that Jones Environmental "never had any role or involvement in any project for or related to Cobb County, Georgia" and that "Jones Environmental has never been a successor to or owner of any entity called Enviroquip, Inc. or Escor, Inc." The problem with this analysis is that it fails to account for the fact that Porteous did not depose that the Jones defendants did not benefit at all via ownership of its subsidiary corporations. Porteous merely deposes that "none of the Jones Defendants realized 'great financial gains at the expense of Cobb County.' " Moreover, I cannot accept any conclusion that a parent corporation does not benefit via ownership of a capitalized subsidiary. At the very least, the value of a parent corporation is increased to the extent of the value of its wholly-owned subsidiary corporations. Further, while quoting from *Coca-Cola Co. v. Procter & Gamble Co.*, supra, the majority misses the mark of Judge Vining's decision by failing to consider the relationship between the Jones defendants and the remaining subsidiary or affiliate corporate defendants. In fact, the majority completely discounts proof regarding the Jones defendants' complete control over Enviroquip, Inc. and Escor, Inc. via the mutual agent of the defendant corporations, Jim Porteous.

There is no question but that Jim Porteous was seeking to develop business in the area of environmental engineering on behalf of his corporate principals, i.e., the Jones defendants, Enviroquip, Inc. and Escor, Inc. It is my view, that such singularity of purpose would authorize a finding that Porteous exercised complete control over Enviroquip, Inc. and Escor, Inc. on behalf of The Jones Group, P.L.C. and its corporate subsidiaries (Jones U. S. Holdings, Inc. and Jones Environmental, Inc.) so as to impute the acts of Enviroquip, Inc. and Escor, Inc. to the Jones defendants for purposes of establishing jurisdiction under Georgia's Long Arm Statute, OCGA § 9-10-91 (1), (2) and (3), and satisfying notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. See *Coca-Cola Co. v. Procter & Gamble Co.*, supra at 308. In other words, I agree with this Court's holding that "[t]o permit a foreign [corporation] to insulate itself from foreseeable liability by setting up a separate but wholly-owned subsidiary for conducting its business in the United States would deny the notion of fair play to [citizens] of this state." *Showa Denko K.K. v. Pangle*, 202 Ga. App. 245, 248 (2) (414 SE2d 658).

2. With respect to Division 12 of the majority opinion, I am compelled to concur specially as I agree that Cobb County is an appropriate venue for Jack U. Greenlees in light of allegations indicating that Greenlees is a joint tortfeasor with at least one other defendant over which venue is proper in Cobb County. See *Ray v. Atkins*, 205 Ga. App. 85, 90 (4) (421 SE2d 317). However, I do not agree with the majority's holding that Greenlees waived venue simply by admitting that Cobb County was an appropriate venue for resolving an unrelated divorce action. The majority cites no authority for this holding and I do not think it prudent to engage such a rule when it is unnecessary to do so.

I am authorized to state that Chief Judge Beasley and Judge Ruffin join in this opinion.

DECIDED JUNE 26, 1995 —
RECONSIDERATION DENIED JULY 26, 1995 — 

*Cofer, Beauchamp & Butler, Larry K. Butler, Bryant K. Smith, John L. Lindsay*, for Cobb County, The Wickliffe Company & Mayes, Sudderth & Etheredge, Inc.

*Alston & Bird, Robert D. McCallum, Jr., David M. Maxwell, H. Suzanne Smith, Hughes, Hubbard & Reed, John M. Townsend, Mark H. Duesenberg*, for The Jones Group & Enviroquip, Inc.

*Adele Grubbs*, for Walton.

*Boyce, Ekonomou & Atkinson, Andrew J. Ekonomou, William M. Coolidge III, Custer & Hill, Lawrence B. Custer*, for Greenlee.